Opinion filed July 24, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00201-CV

_____

## DLA PIPER US, LLP, Appellant

## V.

## CHRIS LINEGAR, Appellee

**On Appeal from the 201st District Court**

**Travis County, Texas**

**Trial Court Cause No. D-1-GN-10-000789**

### M E M O R A N D U M   O P I N I O N

This appeal arises from a lawyer liability case in which the jury found for Chris Linegar on multiple claims centered around alleged misrepresentations made by the law firm of DLA Piper US, LLP[1] regarding a loan. The trial court rendered judgment on the jury verdict in favor of Linegar for $1,164,245.40 in damages and

---

[1]In its notice of appeal, DLA Piper notes that its correct name is DLA Piper LLP (US).

for prejudgment and postjudgment interest. Because we find that Linegar lacked standing to pursue his claims against DLA Piper, we reverse and render.

Linegar is an Australian financier and investor. In 2004, he formed a company called Key Ovation. He later divided the company into two companies: Key Ovation, LLC and IdentiPHI, LLC. Both companies were based in Austin, Texas. In 2008, IdentiPHI merged with Saflink Corporation, a Seattle company. In the merger, Saflink was represented by DLA Piper, and IdentiPHI was represented by Akin & Almanza. IdentiPHI, Inc. became the name of the merged company, and Linegar owned thirty-five percent of the new company. In the process of completing the merger, it became apparent that IdentiPHI needed capital to stay in business until IdentiPHI could secure the necessary funding for the company to grow. Linegar proposed a "bridge loan" from his superannuation fund (retirement account) in Australia. Zaychan Pty Limited, an Australian corporation that served as the trustee for Linegar's retirement fund, was the lender for the bridge loan. Linegar signed the promissory note as chairman and director of Zaychan under the designation, "AGREED AND ACCEPTED." The $1.75 million loan (in Australian dollars) was to be repaid by June 29, 2008.

Prior to the execution of the note, Linegar attended a dinner party with the board members of IdentiPHI and several other individuals. Linegar claimed that he sat next to Michael Hutchings, a lawyer at DLA Piper, and discussed his concerns regarding the loan to IdentiPHI. It was Linegar's testimony that Hutchings assured him that "his" security interest was not at risk and that "everything would be taken care of." Linegar testified that he believed that DLA Piper represented him in connection with the loan. DLA Piper did not disclose to Linegar that it was not representing him and that his interests were adverse to IdentiPHI's interests.

In mid-June, Linegar became concerned that IdentiPHI was not going to pay back the loan by June 29. He consulted with Rick Akin of Akin & Almanza regarding his options in the event he had to "call up the loan." Akin discovered that DLA Piper had not filed the UCC-1 financing statement and, thus, Zaychan's promissory note had not been perfected. Due to strict regulations on making loans from superannuation funds in Australia, the loan had to be paid back by June 30, 2008. In order to mitigate his loss and to keep his superannuation fund in compliance with Australian law, Linegar took out a mortgage on his home and repaid his superannuation fund. Zaychan assigned the note to Key Ovation, and Key Ovation amended the note to extend the payment deadline. Key Ovation filed the UCC-1 financing statement and perfected the loan. Peter Gilbert, as CEO of Key Ovation, signed the new note on behalf of Key Ovation. Key Ovation also issued a promissory note to Linegar in which Key Ovation was required to pay Linegar the amount of the original loan if and when Key Ovation collected on the loan from IdentiPHI.

Subsequently, Key Ovation loaned IdentiPHI an additional $400,000. IdentiPHI was cash-strapped and ultimately filed for bankruptcy. Key Ovation agreed to take $550,000 from a stalking-horse bidder instead of pursuing the full note in bankruptcy because the security interest was subject to attack due to the time of perfection of the note. Key Ovation recovered $150,000 of the original $1.75 million loan and the full amount on the subsequent $400,000 loan. Key Ovation gave the money directly to Linegar as required under the promissory note between Key Ovation and Linegar.

Linegar, Zaychan, and Key Ovation filed suit against DLA Piper and alleged multiple claims. They sought actual and punitive damages. Zaychan's claims were dismissed with prejudice on summary judgment. Key Ovation filed a notice of nonsuit in which it sought to dismiss its claims without prejudice. Linegar's

3

claims proceeded to a jury trial, and the jury found for Linegar on his negligent failure to warn, negligent misrepresentation, fraud by failure to disclose, legal malpractice, and breach of fiduciary duty claims. The jury found damages in the amount of $1,293,606 and apportioned ten percent responsibility to Linegar. The trial court rendered judgment on the jury verdict for Linegar in the amount of $1,164,245.40.

DLA Piper presents eight issues on appeal: (1) whether Linegar had standing to bring suit against DLA Piper; (2) whether the trial court erred when it excluded evidence of and when it refused jury questions on the conduct of two responsible third parties: Zaychan and Key Ovation; (3) whether the trial court erred when it admitted a Washington rule of professional conduct regarding a lawyer's obligations to non-clients when the Washington rule varied from Texas law; (4) whether the trial court erred when it admitted certain evidence regarding SEC filings and when it excluded other evidence regarding SEC filings; (5) whether the trial court erred when it lumped Linegar's claims into one question in the jury charge when the damages flowed from three distinct drawdowns on the loan; (6) whether there is sufficient evidence of an agreement to form an attorney-client relationship between DLA Piper and Linegar; (7) whether there is sufficient evidence of a negligent misrepresentation or a fraudulent omission based on a three-to-four-minute dinner conversation regarding the loan; and (8) whether the damages are excessive.[2]

We will first address DLA Piper's claim that Linegar lacked standing to bring suit against DLA Piper because, at the relevant time, Linegar, as an individual, was not the holder of the note to IdentiPHI; Zaychan was. Standing is an issue that can be raised at any time because it is a part of subject-matter

---

[2]Linegar and Zaychan originally filed a notice of cross-appeal, but they subsequently chose not to pursue the cross-appeal and did not file a cross-appellants' brief.

jurisdiction, which is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993). The focus in a standing issue is whether the party bringing the lawsuit has a sufficient relationship with it so that there is a justiciable interest in the outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Standing exists if the party bringing the lawsuit is personally aggrieved by the alleged wrong. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996).

The general test for standing in Texas requires that there "be a real controversy between the parties" and that the controversy "will be actually determined by the judicial declaration sought." *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)). When a corporation suffers an injury, the corporation is the party that has standing to bring suit. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). "A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." *Id.* An exception to the rule, however, is that a stockholder may bring suit if the wrongdoer violates a duty owed to the stockholder directly and if the stockholder suffered damages. *Id.* To recover individually, the stockholder must prove a personal cause of action and a personal injury. *Id.*

In addition, when a trust suffers an injury due to a third party's actions, the proper party to bring suit on behalf of the trust is the trustee. *InterFirst Bank-Houston, N.A. v. Quintana Petroleum Corp.*, 699 S.W.2d 864, 874 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (holding beneficiary lacked standing to assert claim against the estate); *see also Hamilton v. McLean*, No. 03-99-00320-CV, 2000 WL 502828, at *3 (Tex. App.—Austin Apr. 27, 2000, no pet.) (not designated for publication) (citing *InterFirst Bank-Houston*, 699 S.W.2d at 874). "It is only when the trustee cannot or will not enforce the cause of action that he

5

has against the third person that the beneficiary is allowed to enforce it." *InterFirst Bank-Houston*, 699 S.W.2d at 874. When the beneficiary is permitted to enforce the cause of action, the beneficiary is acting for the trustee on behalf of the trust, not on behalf of himself. *Id.*

Linegar's main contention in the lawsuit against DLA Piper was that DLA Piper failed to secure "his" interest in the loan as DLA Piper represented to him that it would and that, as a result of the misrepresentation, Linegar lost over one million dollars. Throughout the proceedings below, DLA Piper challenged whether Linegar had standing to bring suit against DLA Piper. Specifically, DLA Piper argued that, even though the money for the loan came from Linegar's retirement fund, Zaychan, as trustee of the fund, was the holder of the note and the sole party that had an unsecured interest in the note. We agree with DLA Piper's contention that Linegar lacked standing in this case.

Linegar, as an individual, was not a party to the note. Linegar "AGREED AND ACCEPTED" to the note as chairman and director of Zaychan. The note was made payable to Zaychan and was subsequently transferred from Zaychan to Key Ovation, another company that Linegar controlled. Although Linegar voluntarily borrowed money in order to repay his retirement fund, Linegar agrees that his decision to repay Zaychan with personal funds has no impact on his standing. Whether Linegar is viewed as a shareholder of Zaychan or as a beneficiary of his retirement account in which Zaychan served as trustee, Linegar does not have standing to bring this suit. There is no evidence to show that Zaychan could not or would not enforce a cause of action against DLA Piper. In fact, the record directly contradicts such a proposition because Zaychan was an initial plaintiff in this suit. And, even if Zaychan had refused to bring suit against DLA Piper, Linegar would only be authorized to bring suit on behalf of Zaychan, not on behalf of himself.

Linegar argues that the question is not who has standing to sue on the note but, rather, who has standing to sue DLA Piper for misrepresentations it made to Linegar. Thus, Linegar contends that he has standing because DLA Piper gave advice to him, he relied on that advice, and he was injured as a result. Linegar points out that it was his retirement money that was loaned at his direction and his retirement money that was lost. He directs us to *Murphy v. Campbell*, 964 S.W.2d 265 (Tex. 1997), to support his argument that he suffered a direct loss.

In *Murphy*, accountants advised both a company and its stockholders about the tax consequences of a sale of the company, and specifically advised the stockholders about the effect of the dissolution on their individual interests. 964 S.W.2d at 267. The supreme court held that the stockholders had standing to sue because "the effects of tax treatment would directly fall" on the stockholders and the stockholders suffered a direct loss as a result of their direct reliance on the accountants' advice. *Id.* at 268. Linegar's case is distinguishable. He did not seek advice regarding an interest that he held; he sought advice regarding an interest that Zaychan held. While we agree that it was his retirement money that was loaned, Linegar, as an individual, was not the party who loaned the money. Linegar, as the chairman and director of Zaychan, agreed to and accepted the terms of the note. If DLA Piper made any misrepresentations or failed to disclose any information, it did so toward Zaychan. Linegar, as an individual, did not have a security interest in the note that needed to be perfected; only Zaychan did. Therefore, the only party that DLA Piper could have made misrepresentations to at the time of the loan transaction regarding whether the loan was secured was Zaychan. We hold that Linegar did not have standing to bring suit against DLA Piper. DLA Piper's first issue is sustained.

Because the standing issue is dispositive of this case, it is not necessary for us to address the seven remaining issues presented by DLA Piper. *See* TEX. R.

7

APP. P. 47.1. We reverse the judgment of the trial court and render judgment in favor of DLA Piper that Linegar take nothing in his suit against DLA Piper.


JIM R. WRIGHT

CHIEF JUSTICE


July 24, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.