**Opinion filed December 21, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00201-CV

_____

## DLA PIPER LLP (US), Appellant

## V.

## CHRIS LINEGAR, Appellee

**On Appeal from the 201st District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-10-000789**

### O P I N I O N   O N   R E M A N D

This court previously determined that Chris Linegar lacked standing to bring suit against DLA Piper LLP (US); however, the Texas Supreme Court granted Linegar's petition for discretionary review, determined that Linegar did have standing to sue DLA Piper for legal malpractice, and remanded the cause to this court to address the remaining issues. *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d

276 (Tex. 2016), *rev'g* 507 S.W.3d 768 (Tex. App.—Eastland 2014). We now affirm the trial court's judgment.[1]

Linegar, an Australian financier and investor, formed a company called Key Ovation. He later divided that company into two companies: Key Ovation, LLC and IdentiPHI, LLC, both of which were based in Austin, Texas. In 2008, IdentiPHI, LLC merged with Saflink Corporation, a Seattle company. In the merger, Saflink was represented by DLA Piper, and IdentiPHI, LLC was represented by Akin & Almanza. IdentiPHI, Inc. (IdentiPHI) was the name of the merged company, and Linegar was a major stockholder in that company. After the merger, DLA Piper represented IdentiPHI as corporate counsel.

During the merger process, it became apparent that IdentiPHI needed capital to stay in business while it attempted to secure permanent financing. Linegar proposed a "bridge loan" from his superannuation fund (a self-managed retirement trust) in Australia. Linegar, as chairman, director, and majority shareholder of Zaychan Pty Limited, an Australian corporation that served as trustee for the retirement fund, arranged for a bridge loan of 1.75 million Australian dollars (AUD)—which was equivalent to approximately 1.64 million U.S. dollars (USD)— from the retirement fund. In conjunction with the bridge loan, IdentiPHI executed a promissory note on March 12, 2008; the promissory note contained a clause granting Zaychan a security interest in all of IdentiPHI's assets. The note was payable on or before June 29, 2008.

Prior to the execution of the note, Linegar attended a dinner party with the board members of IdentiPHI and several other individuals. Linegar claimed that he sat next to Michael Hutchings, a partner at DLA Piper, and that they discussed

---

[1]We note that this case was transferred to this court from the Third Court of Appeals under a docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013); *see also* TEX. R. APP. P. 41.3 (regarding controlling precedent).

Linegar's concerns regarding the bridge loan. Linegar testified that Hutchings assured him that his security interest was not at risk and that "everything would be taken care of." Linegar testified that he believed that DLA Piper represented him in connection with the loan. DLA Piper did not disclose to Linegar that it was not representing him and that his interests were adverse to IdentiPHI's interests.

In mid-June, Linegar became concerned that IdentiPHI was not going to pay back the loan by June 29. He consulted with Rick Akin of Akin & Almanza regarding his options in the event that he had to "call up the loan." Akin discovered that DLA Piper had not filed the UCC-1 financing statement; thus, Zaychan's security interest had not been perfected. Due to strict regulations on making loans from superannuation funds in Australia, the loan had to be paid back by June 30, 2008. In order to mitigate his loss and to keep his superannuation fund in compliance with Australian law, Linegar took out a mortgage on his home and repaid his superannuation fund. Zaychan assigned the note to Key Ovation, and Key Ovation amended the note to extend the payment deadline. Key Ovation then filed the UCC-1 financing statement. Key Ovation also issued a promissory note to Linegar in which Key Ovation was required to pay Linegar the amount of the original loan if and when Key Ovation collected on the loan from IdentiPHI.

Cash-strapped, IdentiPHI ultimately filed for bankruptcy. Key Ovation recovered $150,000 (USD) of the $1.75 million (AUD) loan and gave that money directly to Linegar "[b]ecause it was his money." Key Ovation and Linegar did not pursue the full amount of the note in the IdentiPHI bankruptcy because the security interest was subject to attack due to its belated perfection.

Linegar, Zaychan, and Key Ovation sued DLA Piper and Hutchings for legal malpractice, negligent misrepresentation, breach of fiduciary duty, breach of contract, unjust enrichment, and deceptive trade practices. They claimed that DLA Piper and Hutchings advised Linegar individually regarding the loan, including

assuring him that it would be perfected, and they sought actual and punitive damages. Zaychan's claims were dismissed with prejudice on summary judgment. Key Ovation filed a notice of nonsuit in which it dismissed its claims without prejudice. Linegar's claims against DLA Piper and Hutchings proceeded to a jury trial. However, in order to simplify the jury charge, Linegar nonsuited his claims against Hutchings. The jury found for Linegar on his claims of negligent failure to warn, negligent misrepresentation, fraud by failure to disclose, legal malpractice, and breach of fiduciary duty. The jury found damages in the amount of $1,293,606 and apportioned 90% responsibility to DLA Piper, 10% to Linegar, and 0% to Akin & Almanza. Based on the jury's verdict, the trial court rendered judgment for Linegar in the amount of $1,164,245.40, plus interest.

Because DLA Piper's first issue on appeal challenging Linegar's standing has been resolved in Linegar's favor, we address Issues Two through Eight in this opinion on remand. In its second issue, DLA Piper asserts that the trial court erred when it excluded evidence and refused jury questions regarding the conduct of Zaychan and Key Ovation, which DLA Piper asserts are responsible third parties. In the third issue, DLA Piper contends that the trial court erred when it admitted a Washington rule of professional conduct regarding a lawyer's obligations to non-clients when the Washington rule varied from Texas law. In the fourth issue, DLA Piper contends that the trial court erred when it admitted certain evidence regarding SEC filings yet excluded other evidence regarding SEC filings. In its fifth issue, DLA Piper complains that the trial court erred when it lumped Linegar's claims into one question in the jury charge even though the damages flowed from three distinct drawdowns on the loan. In the sixth and seventh issues, DLA Piper challenges the legal sufficiency of the evidence to show that an agreement existed between DLA Piper and Linegar to form an attorney-client relationship and to show the existence of any negligent misrepresentation or fraudulent omission on the part of DLA

4

Piper. In its final issue, DLA Piper urges that the amount of damages awarded to Linegar was excessive.

In its second issue, DLA Piper contends that it should have been permitted to introduce evidence and obtain jury findings on the responsibility of both Zaychan and Key Ovation for the harm suffered by Linegar. *See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 33 (West 2015). DLA Piper asserts that Zaychan is a responsible third party because, as trustee of Linegar's superannuation fund, Zaychan violated its duties under Australian law when it loaned money to IdentiPHI. DLA Piper asserts that Key Ovation is a responsible third party because it "accepted less than 10% of the Note's value in an unreasonable settlement."

A responsible third party is "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought." *Id.* § 33.011(6). "The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility . . . with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought . . . ." *Id.* § 33.003(a). As pointed out by the Texas Supreme Court, this is not a suit on the note; it is a suit for legal malpractice and other torts committed by DLA Piper during its alleged representation of Linegar. 495 S.W.3d at 280. The harm for which damages were sought in this case related to the failure to timely perfect the security interest in the note. *See, e.g.*, *City Nat'l Bank of Sulphur Springs v. Smith*, No. 06-15-00013-CV, 2016 WL 2586607, at *7–8 (Tex. App.—Texarkana May 4, 2016, pet. denied) (mem. op.) (determining that the harm or injury for which recovery of damages could be sought in a legal malpractice suit that involved a missed deadline under statute of limitations was the loss of the cause of action and holding that "only those persons who contributed in causing the loss of [the] cause of action against the Bank should be considered by the jury in the proportionate responsibility issue"). Thus, only those persons or entities who contributed to causing the untimely perfection

of the security interest in the note are responsible third parties. DLA Piper did not assert at trial and does not assert on appeal that Zaychan or Key Ovation contributed to the untimely filing of the UCC-1 financing statement.

Additionally, Linegar—not Key Ovation—was responsible for making the decision to accept the bankruptcy settlement that DLA Piper contends was unreasonable. The reasonableness of that decision, which was based on the advice and recommendation of Akin & Almanza, was addressed in depth at trial. In this regard, we note that the jury determined that Akin & Almanza's negligence, if any, did not cause the injury in this case.

Neither Zaychan nor Key Ovation is a responsible third party under the circumstances in this case. Thus, the trial court did not err when it refused to submit jury questions as to their responsibility.

DLA Piper also argues in its second issue that the trial court abused its discretion when it excluded evidence regarding Zaychan's breach of duty under Australian law with respect to the loan to IdentiPHI because, but for that breach of duty, Zaychan would not have made the loan and Linegar would not have suffered any loss. While it is true that, if the loan from Linegar's retirement fund had not been made to IdentiPHI, Linegar would not have suffered the loss sued upon in this case, the proffered evidence relates to an attenuated cause that is only remotely connected to DLA Piper's conduct. *See IHS Cedars Treatment Ctrs. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799–800 (Tex. 2004) (addressing attenuation of the causal connection between conduct and liability).

The decision whether to admit evidence rests within the discretion of the trial court, and an appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently or because the trial court committed an error in judgment. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). We cannot hold that the trial court abused its

discretion when it excluded the proffered evidence as irrelevant. *See* TEX. R. EVID. 401(b) (to be relevant, a fact must be "of consequence in determining the action"). We overrule DLA Piper's second issue on appeal.

In its third issue, DLA Piper argues that the trial court erred when it permitted Linegar to introduce into evidence a Washington rule of professional conduct and expert testimony based on that rule. The evidence was admitted to show the standard of care that applied to Hutchings, who was licensed in the state of Washington. The parties did not dispute at trial that the Washington rules would apply to Hutchings's conduct.[2] The dispute centered on whether the rule and evidence thereon were admissible into evidence. DLA Piper contended that the rule was not relevant and that the evidence was prejudicial in that it allowed Linegar "to use that rule to imply a duty that exists and is different from Texas law with regard to negligently failing to clarify." The rule at issue provides as follows: "In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing." WASH. RULES PROF'L CONDUCT R. 1.13(f).

We agree with DLA Piper that neither the Washington rules nor the Texas rules give rise to a cause of action against a lawyer and that neither state's rules may form the basis for civil liability. *See id.* preamble ¶ 20; TEX. DISCIPLINARY RULES PROF'L CONDUCT preamble ¶ 15. However, we disagree with DLA Piper's contention that these rules cannot be used as evidence of a violation of an existing duty of care. *See* WASH. RULES PROF'L CONDUCT preamble ¶ 20 (stating that, "since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a

---

[2]We note that the Washington rule at issue is substantially similar to the corresponding Texas rule. *Cf.* WASH. RULES PROF'L CONDUCT R. 1.13(f), *with* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12(e), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013 & Supp. 2017) (Tex. State Bar R. art. X, § 9).

Rule may be evidence of breach of the applicable standard of conduct"); *Two Thirty Nine Joint Venture v. Joe*, 60 S.W.3d 896, 905 (Tex. App.—Dallas 2001), *rev'd on other grounds*, 145 S.W.3d 150 (Tex. 2004) (applying Texas rules and holding that a trier of fact may consider a relevant rule "as evidence of the standard of care and breach of the standard"). Moreover, the trial court instructed the jury prior to opening statements that a "violation of the [disciplinary] rules does not itself establish any liability in this case." We cannot hold that the trial court abused its discretion when it admitted into evidence Rule 1.13 and expert testimony about Hutchings's conduct with respect to that rule. We overrule DLA Piper's third issue on appeal.

In its fourth issue, DLA Piper complains that the trial court erred when it permitted Linegar to introduce evidence related to SEC filings made by DLA Piper on Linegar's behalf but refused to permit DLA Piper to introduce evidence that DLA Piper made similar SEC filings for other officers and directors of IdentiPHI and that those officers and directors did not believe that such filings created an attorney/client relationship with DLA Piper. DLA Piper argues that evidence of communications between Linegar and DLA Piper that (1) related to SEC filings and (2) were made after March 12, 2008, the date of the first drawdown on the note, merely served to "confuse and prejudice the jury." DLA Piper argued similarly at trial, and the trial court overruled DLA Piper's relevance and Rule 403 objections. *See* TEX. R. EVID. 401–403.

Although the relevance of several of the e-mails that were dated after March 12 and related to SEC filings do not seem to be particularly relevant to the issues in this case, we must keep in mind that an appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently or because the trial court committed an error in judgment. *Robinson*, 923 S.W.2d at 558. The jury was asked to determine, in Question No. 5, whether there

8

was an attorney-client relationship between DLA Piper and Linegar "at any time from February 18, 2008 to June 17, 2008," which was the date of the last drawdown. Some of the evidence about which DLA Piper complains in this issue was relevant to a determination of that question. Evidence of others' beliefs with respect to their relationship with DLA Piper as a result of the SEC filings did not controvert Linegar's testimony and was not relevant to any fact of consequence. Furthermore, especially in light of DLA Piper's inaccurate opening statement,[3] it was within the trial court's discretion to rule that the probative value of the evidence was relevant and was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or undue delay. *See* TEX. R. EVID. 401–403. We cannot hold that the trial court abused its discretion with respect to the admission and exclusion of evidence related to the SEC filings. DLA Piper's fourth issue on appeal is overruled.

In its fifth issue, DLA Piper contends that the trial court erred when it "refused to granulate the jury charge" and "lump[ed] the plaintiff's claims into one question, even though the damages flowed from three distinct drawdowns on the loan." In its brief, DLA Piper specifically mentions Question No. 1 (negligent failure to advise Linegar that DLA Piper did not represent him), No. 5 (existence of attorney-client relationship at any time between February 18 and June 17, 2008), and No. 10 (amount of damages caused by DLA Piper's conduct).

A trial court "shall, whenever feasible, submit the cause upon broad-form questions." TEX. R. CIV. P. 277. The loss in this case stemmed from DLA Piper's advice to Linegar with respect to the original loan, not from each drawdown

---

[3]During his opening statement, counsel for DLA Piper stated:

And by the way, when we talk about e-mails, I want to make one thing very clear. Not only were there no letters between my clients and Chris Linegar, ever, there were no e-mails between my clients and Chris Linegar. DLA Piper never sent Mr. Linegar an e-mail. Mr. Linegar never sent DLA Piper an e-mail.

separately. The trial court properly refused to distinguish between the three drawdowns in its submission of the charge to the jury.

While we agree with DLA Piper's assertion that the extended timeframe used in Question No. 5 did not properly limit the jury's consideration of the existence of an attorney-client relationship to the occurrence or transaction at issue, we do not find that the error in Question No. 5 "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a). We must consider the entire jury charge when determining whether an improper charge caused harm. *Thota v. Young*, 366 S.W.3d 678, 694 (Tex. 2012). The trial court properly limited the damage question, Question No. 10, as follows:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Chris Linegar for the *injury to him, if any, caused by the conduct of DLA Piper*?
>
> Consider only the difference, if any, between the amount awarded on the Note to Chris Linegar, through Key Ovation, in the IdentiPHI bankruptcy and *the amount Chris Linegar would have received on the Note if not for the conduct of DLA Piper*.

(Emphasis added). Any damages that stemmed from DLA Piper's representation of Linegar, as found by the jury in answer to Question No. 5, were limited to the injury caused by DLA Piper with respect to the note. Because the trial court submitted appropriate broad-form questions and because the error in Question No. 5 is not reversible, we overrule DLA Piper's fifth issue.

In its sixth and seventh issues, DLA Piper challenges the legal sufficiency of the evidence to support the jury's answers to some of the liability questions: specifically, that DLA Piper and Linegar agreed to form an attorney-client relationship and that DLA Piper made a negligent misrepresentation or committed fraud by omission. However, DLA Piper does not challenge the sufficiency of the

evidence with respect to the jury's finding that DLA Piper proximately caused injury to Linegar by negligently failing to advise Linegar that DLA Piper did not represent him, which DLA Piper refers to as "the confusion claim." The trial court's judgment can be upheld on that theory of liability; therefore, we need not address the merits of DLA Piper's sixth and seventh issues. *See* TEX. R. APP. P. 47.1; *Natho v. Shelton*, No. 03-11-00661-CV, 2014 WL 2522051, at *1 (Tex. App.—Austin May 30, 2014, no pet.); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 708–09 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

In its final issue, DLA Piper contends that the damages are excessive "given that [Linegar's] damage model was based on a crucial assumption about the funds available in bankruptcy court that [Linegar] never proved." DLA Piper asserts that Linegar did not prove that he would have recovered more than an additional $587,145 in the IdentiPHI bankruptcy. Although we agree that DLA Piper's assertion would be correct if one was to merely consider the amount of money that Linegar would have recovered from the proceeds of the bankruptcy after Passlogix, which held a primed security interest due to its bankruptcy loan, was paid. However, DLA Piper's argument does not take into account all of the evidence presented by Linegar or the probability that, if Linegar's security interest had been timely perfected, Passlogix would not have been in the picture.

The jury found that the difference between the amount awarded to Linegar on the note in the IdentiPHI bankruptcy and the amount that Linegar would have received on the note but for DLA Piper's conduct was $1,293,606. There was some evidence that, if the security interest had been timely perfected, Linegar would have been the "800-pound gorilla" and could have either foreclosed on IdentiPHI's assets or bid on those assets in the bankruptcy proceeding using a credit for the amount of debt that was owed to him. The total amount of debt that IdentiPHI owed to Linegar, including both the original loan and subsequent additional loans (which were

11

properly perfected), was approximately $2.1 million, plus interest; IdentiPHI's assets were sold in bankruptcy for $2.35 million. The evidence showed that, had the security interest been timely perfected, Linegar could have obtained the $2.35 million worth of IdentiPHI assets in the bankruptcy sale without taking a penny out of his pocket. We cannot hold that the jury awarded excessive damages, and we note that the supreme court stated in its opinion in this case: "Had the security interest in the March 2008 note to Zaychan been timely perfected, Key Ovation, and thus Linegar, would have recovered the full amount due under the note— approximately $1.67 million." 495 S.W.3d at 278. We overrule DLA Piper's eighth issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

December 21, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.