2026 Tex. Bus. 5



| | | |
|---|---|---|
| PRESTON HOLLOW CAPITAL, LLC; and PHCC LLC, *Plaintiffs* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| v. | | Cause No. 25–BC01B–0030 |
| TRUIST BANK FORMERLY KNOWN AS BRANCH BANK & TRUST, *Defendant* | | |

## OPINION REGARDING DESIGNATION OF THIRD PARTIES

*Syllabus[1]*

*This opinion addresses Civil Practice & Remedies Code Chapter 33's definition of "responsible third party" and the meaning of "the harm for which recovery of damages is sought," as used therein.*

## Opinion

[¶ 1]  Based on defendant's live pleadings, the parties' submissions, their oral arguments, and the applicable law, the court issued its January 7, 2026, Order granting Truist's Motion for Leave to Designate Responsible

---

[1] *This syllabus is for the reader's convenience; it is not part of the court's opinion; and it is not legal authority.*

Third Parties conditioned on Truist filing an amended pleading that alleges how Bouldin and Senior Care have separately contributed to Preston Hollow's injury or injuries in accordance with notice pleading standards.[2]

## I. BACKGROUND

[¶ 2] The court takes these facts from the parties' pleadings:

[¶ 3] Senior Care Living VI, LLC was created to develop and operate a senior living center called *Inspired Living at Sugar Land*.[3] Senior Care financed the project with bond financing.[4]

[¶ 4] BB&T was the initial trustee under (i) the Master Indenture between BB&T and Senior Care and (ii) the Bond Indenture between BB&T and the conduit bond issuer, Woodloch Healthcare Facilities Development Corporation.[5] These documents are collectively the "Bond Documents." Defendant Truist is BB&T's successor.[6]

---

[2] Unless otherwise noted, defined terms have the meanings proscribed to them in the parties' briefing.

[3] Plaintiff's Original Petition (POP) ¶ 9(a). Preston Hollow filed a First Amended Petition on January 15, 2026. This opinion addresses the pleading that was live when Truist filed its motion and the court issued its January 7, 2026, order. (*i.e.*, the POP).

[4] *See* POP ¶s 1, 10(a)–(c).

[5] POP ¶ 11(b).

[6] POP ¶ 11(a). Other than this paragraph, the court uses "Truist" to refer to both BB&T and Defendant Truist.

[¶ 5]  Although Woodloch issued the bonds pursuant to the Bond Indenture,[7] Senior Care was the ultimate bond Obligor.[8]

[¶ 6]  Woodloch loaned the bond proceeds to Senior Care under a loan secured by most of Senior Care's assets.[9]  Woodloch also assigned its rights and interests under the Bond Documents and loan proceeds to Truist.[10]

[¶ 7]  To protect the gross revenue collateral pledge, Senior Care and Truist executed Account Control Agreements (ACA) whereby Truist held all ACA-created bank accounts into which Senior Care was to deposit its gross receipts and gross revenue.[11]

[¶ 8]  Pursuant to its rights, Preston Hollow controlled the bond funds during construction of the senior living center.[12]

[¶ 9]  The project was substantially completed by late 2017, and Senior Care started leasing by early 2018.[13]

---

[7] POP ¶ 11(b).
[8] POP ¶ 12(a).
[9] POP ¶ 12(c).
[10] POP ¶ 12(d).
[11] POP ¶s 12(e)–(f).
[12] POP ¶s 16–17.
[13] POP ¶ 18.

[¶ 10]   Beginning in 2019, Preston Hollow learned of multiple alleged Senior Care defaults[14] and directed Truist to send default notices to Senior Care.[15]

[¶ 11]   On March 18, 2019, Preston Hollow issued a Letter of Direction to Truist.  Through that Letter, Preston Hollow instructed Truist to not act under the loan or Bond Documents unless Preston Hollow expressly directed Truist to do so and in return Preston Hollow would indemnify Truist.[16]

[¶ 12]   On March 25, 2019, Preston Hollow issued a Directions to Trustee and Indemnification Letter (D&I Letter) to Truist that similarly instructed Truist to not act unless directed and included an indemnification provision.[17]

[¶ 13] Truist alleges it acted consistently with both letters' directives.[18]

---

[14] POP ¶s 19–21.
[15] POP ¶ 22.
[16] Defendant's Answer and Counterclaims (DAAC) ¶s 25–28.
[17] DAAC ¶ 29–33.
[18] DAAC ¶ 34.

[¶ 14]  When Senior Care allegedly refused to cure its defaults, Preston Hollow directed Truist to accelerate the bonds and loan, which Truist did on May 31, 2019.[19]

[¶ 15]  In June 2019, Preston Hollow sued Senior Care and Bouldin.[20]

[¶ 16]  On July 12, 2019, Truist appointed two successor trustees, and resigned five days later.[21]

[¶ 17]  Upon Truist's resignation, Preston Hollow asked Truist if Senior Care had deposited its gross revenues into the Blocked Accounts as the Bond Documents and ACA required.[22]  Truist disclosed that Senior Care never did so.[23]  Preston Hollow alleges that it later learned that Truist's representative approved Senior Care's deviation from the Bond Documents' and ACA's strict requirements.[24]

[¶ 18]  In the present case, Preston Hollow alleges breaches of fiduciary duty, trust, and contract by Truist as the Bond Documents' trustee.[25]

---

[19] POP ¶ 23.
[20] DAAC ¶ 36.
[21] POP ¶ 25.
[22] POP ¶ 27.
[23] POP ¶ 28.
[24] POP ¶ 29.
[25] *See generally* POP § VII (Causes of Action and Remedies).

[¶ 19]   Truist asserts that at least part of Preston Hollow's harm derives from Senior Care and Bouldin's breaches, justifying designating each a responsible third party.[26]   Specifically, Truist points to Preston Hollow's allegations that Senior Care and Bouldin (i) failed to pay the Project's general contractor; (ii) failed to pay property taxes; (iii) failed to deposit gross revenues into the required accounts; and (iv) improperly transferred funds to another Bouldin-related project, all of which Preston Hollow alleges Truist failed to detect or mitigate.[27]   Ultimately, Preston Hollow alleges that Truist "failed to discharge its duties as trustee," allowing Senior Care and Bouldin to violate their duties under the Bond Documents and causing "irretrievable deterioration of the trust estate."[28]

---

[26] *See generally* Truist's Motion for Leave to Designate Responsible Third Parties (Motion).
[27] Truist's Reply in support of Motion for Leave to Designate Responsible Third Parties (Reply) at 11 (citing POP ¶s 20, 21, 29–32, and 33).
[28] POP ¶ 1; *see also id.* ¶ 47 (Preston Hollow further alleges that "Bouldin and Senior Care have thus far made no payments on their bond obligations" and that Truist's actions "have hampered and worsened the situation for Preston Hollow.").

## II.   ANALYSIS

### A. Standard of Review

[¶ 20]  A court shall grant leave to designate a person as a responsible third party unless another party objects on or before the fifteenth day after the date the motion is served.  TEX. CIV. PRAC. & REM. CODE § 33.004(f).

[¶ 21]  The court shall grant leave over an objection unless the objecting party establishes that the defendant failed to "plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of Texas Rules of Civil Procedure," even after being granted leave to replead.  *Id.*, § 33.004(g).

[¶ 22]  Texas procedural rules require "notice pleading." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (citing TEX. R. CIV. P. 45 & 47).  Notice pleadings are satisfied if they provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense.  *Id.*

### B.  Rules of Statutory Construction

[¶ 23] A court's primary purpose in statutory construction is to implement the Legislature's intent by giving effect to every word, clause, and sentence.  *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 689–90 (Tex. 2020) (citation omitted).  Indeed, statutory text is the "first and foremost" indication

of legislative intent. *Greater Hous. P'Ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). Thus, courts apply the words' common, ordinary meaning unless (i) the text supplies a different meaning or (ii) the common meaning produces absurd results. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

[¶ 24] Further, courts derive statutory meaning from the entire statute. TEX. GOV'T CODE § 311.021(2); *Janvey v. Gold Channel, Inc.*, 487 S.W.3d 560, 572 (Tex. 2016). So, courts "presume the Legislature chose statutory language deliberately and purposefully," *Crosstex Energy Servs. L.P., v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014), and that it likewise excluded language deliberately and purposefully, *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).

## C. Responsible Third Parties

### 1. The Issue and Short Answer

[¶ 25] A responsible third party is:

> any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.

Tex. Civ. Prac. & Rem. Code § 33.011(6).

[¶ 26]   The parties critically disagree over what is the relevant "harm" here.

[¶ 27]   Preston Hollow posits that the only "harm" it seeks recovery for relevant to this motion is Truist's deprivation of its fiduciary and trustee duties.

[¶ 28]   In contrast, Truist defines the harm as the "irretrievable deterioration of the trust estate" alleged by Preston Hollow.[29]

[¶ 29]   Accordingly, Preston Hollow defines "harm" in § 33.011(6) to essentially mean the responsible third party must have participated in the sued-for breach, whereas Truist would have the court conclude that the third party must have only contributed to the alleged injury.

[¶ 30]   Because the court concludes that "harm" as used in § 33.011(6) has a meaning more akin to the legal concept of "injury" than the concept of "breach," and because a responsible third party need only contribute to any single harm among multiple alleged harms plead by the claimant, the court

---

[29] Reply at 6 (citing POP ¶ 1).

granted the motion conditioned upon Truist satisfying the notice pleading standard in its new pleadings.[30]

## 2. Defining "Responsible Third Party"

[¶ 31]  Civil Practice and Remedies Code Chapter 33 does not define "harm" and "damages."  So, this court applies statutory construction principles to ascertain their applicable meanings.

### a.    Chapter 33's 2003 Amendments

[¶ 32]  Before 2003, a responsible third party was:

> any person to whom all of the following apply: (i) the court in which the action was filed could exercise jurisdiction over the person; (ii) the person could have been, but was not, sued by the claimant; and (iii) the person is or may be liable to the plaintiff for all or a part of the damages claimed against the named defendant or defendants.

Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 TEX. GEN. LAWS 971, 973 (amended 2003).

[¶ 33]  But the 2003 amendment expanded the class of persons who could be designated as responsible third parties by (i) dropping the requirements that (a) the court could exercise jurisdiction over the person and

---

[30] This opinion does not address Truist's January 21, 2026, Amended Motion for Leave to Designate Responsible Third Parties (Amended Motion).

(b) that the person could have been sued by the claimant and (ii) no longer requiring the third party to be potentially liable for all or part of the damages claimed, rather now they must "have caused or contributed to causing in any way the harm for which recovery of damages is sought." TEX. CIV. PRAC. & REM. CODE § 33.011(6).

[¶ 34]   While the current statute still requires the designated third party to have caused or contributed to the harm via some "conduct or activity that violates *an* applicable legal standard," *id.* (emphasis added), it is no longer the case that they must be liable to the plaintiff for the damages claimed, which would require satisfying all the essential elements of a cause of action. *See* LIABILITY, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment."); *cf. IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) ("A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.").

[¶ 35]   Accordingly, by requiring that the person (i) could have been sued by the claimant and (ii) may have been liable to the plaintiff for all or a part of the damages claimed against the named defendant, the previous statute

required a showing that the alleged responsible third party violated the same legal standard as the named defendant, whereas the current statute requires only that they violated some legal standard and that violation contributed in some way to the claimed harm.

### b.    The Meaning of "Harm"

[¶ 36] First, the court concludes that throughout Chapter 33, the Legislature appears to have intended "harm" to be somewhat synonymous with "injury" and "damage." *City Nat'l Bank of Sulphur Springs v. Smith*, 2016 WL 2586607, at *7 (Tex. App. 6th Dist. May 4, 2016, pet. denied) (citing § 33.011(6)); s*ee* § 33.004(l) ("[A] party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged *injury or damage*." (emphasis added)); § 33.011(1) (a claimant includes a party seeking "recovery of damages for *injury* to another person, *damage* to property of another person, death of another person, or *other harm* to another person." (emphasis added)); § 33.011(4) (percentage of responsibility is the percentage attributed by the trier of fact to each person "with respect to causing or contributing to cause in any way ... the personal

*injury,* property *damage*, death, or *other harm* for which recovery of damages is sought." (emphasis added)).

[¶ 37]    The court further concludes that the terms "harm" and "damages" presumably have different meanings given the Legislature used both terms in the same sentence in its 2003 amendment responsible third party definition.  *See Bank of Sulphur Springs*, 2016 WL 2586607, at *6–7; *see also First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008) (proper statutory construction "gives effect to every word"); GOV. CODE. § 311.021(2) (it is presumed that the entire statute is intended to be effective).

[¶ 38]    To ascertain the Legislature's intended meanings for the terms, the *Bank of Sulphur Springs* court looked to dictionary definitions of "harm," "injury," and "damages" and concluded that "harm" is often equated to "injury" and damages are equated to "compensation."  2016 WL 2586607, at *7.

[¶ 39]    "Harm" means "injury, loss, damage; material or tangible detriment."  HARM, BLACK'S LAW DICTIONARY (12th ed. 2024).   That Dictionary further notes the similarity between "harm" and "injury" and that "[s]ome authorities distinguish harm from injury, holding that while harm denotes any personal loss or detriment, injury involves an actionable invasion

of a legally protected interest." INJURY, Black's Law Dictionary (citing Restatement (Second) of Torts § 7 cmt. a (1965)).

[¶ 40] Additionally, "damages" means "compensation imposed by law for loss or injury." DAMAGES, Merriam–Webster's Collegiate Dictionary (11th ed. 2006); *see also* DAMAGES, Black's Law Dictionary (12th ed. 2024) ("Money claimed by, or ordered to be paid to, a person as compensation for loss or injury.").

[¶ 41] Both "harm" and "damages" focus on the results or effects of a defendant's alleged breach; whereas breach itself focuses on the actions taken by the defendant in violation of a legal duty, giving rise to the injury. *See* BREACH, Black's Law Dictionary (12th ed. 2024) ("A violation or infraction of a law, obligation, or agreement, esp. of an official duty or a legal obligation, whether by neglect, refusal, resistance, or inaction."); *see, e.g.*, *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—5th Dist. 2006, pet. denied) ("The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the *defendant's breach must result in injury to the plaintiff* or benefit to the defendant." (emphasis added)).

[¶ 42] As noted at ¶s 34–35, while the pre-2003 law required defendants to allege that the responsible third party was liable to the claimant, including that they breached the same legal standard expected of defendant, the new law focuses only on whether the third party *in any way* contributed to the ultimate harm or injury through some unlawful act. *See In re Mod. Senior Living, LLC*, 2022 WL 2187396, at *4 (Tex. App.—5th Dist. June 17, 2022, orig. proceeding) (Speaking of § 33.011(6): "The standard is contribution to the harm; breach of the same duty is not required.")

[¶ 43] Accordingly, there is no rule that a non-fiduciary cannot contribute to the harm caused by the breach of a fiduciary's duties as Preston Hollow essentially argues[31]—the defendant and third party's breaches of their legal standards may be different if there is a shared harm. *See In re Smith*, 366 S.W.3d 282, 286 (Tex. App.—5th Dist. 2012, orig. proceeding) (in negligent investigation claim against her former attorneys, "the fact that [third party] is not an attorney would not necessarily mean she could not have tortiously contributed to cause the harm for which [plaintiff] is suing"); *Bank of Sulphur Springs*, 2016 WL 2586607, at *8 (discussing *In re Smith*).

---

[31] *See* Opp. at 2 (arguing "it was Truist, not Senior Care or Bouldin, that owed Preston Hollow [] fiduciary duties").

### c. Preston Hollow's Arguments

[¶ 44]   Preston Hollow cites legal malpractice cases to argue otherwise. But those cases support the court's conclusions.

[¶ 45]   For starters in *Bank of Sulphur Springs*, Smith sued his former attorney for missing the deadline to sue Smith's bank for malicious prosecution.  2016 WL 2586607, at *1.  The attorney named the time-barred bank as a Chapter 33 responsible third party.  After clarifying the difference between "harm" and "damages" in the statute, the court concluded that while Smith's *damages* would be based on what amount Smith would have collected had he recovered the judgment against the bank, the lost cause of action was his alleged *harm or injury.  Id.* at *7.

[¶ 46]   So, to establish the bank as a responsible third party, "Smith must have both alleged and proven that the Bank contributed to causing Smith to lose his cause of action against the Bank, *e.g.*, by somehow contributing to missing the statute of limitations."  *Id.* at *8.  In other words, "[a]lthough it was necessary for Smith to put on evidence of the damages he sustained … to establish the lost cause of action's true value, he was not suing for malicious prosecution damages.  Rather, the damage he sought was the value of that lost cause of action."  *Id.* at *9.  Because there was no evidence the bank

contributed to the loss of Smith's cause of action, it was not a responsible third party. *Id.* at *8.

[¶ 47]  Next, *DLA Piper LLP (US) v. Linegar*, 539 S.W.3d 512 (Tex. App.—11th 2017, pet. denied) is similar.  There, Linegar sued DLA Piper for malpractice for failing to timely perfect a security interest, resulting in Linegar receiving less than what he would have been owed on a promissory note.  *Id.* at 515–17.  The law firm sought to designate (i) a party that the firm alleged violated its duties in loaning the money in the first place and (ii) Linegar's agent, which the firm alleged settled on behalf of Linger for too little, increasing the amount of damages the law firm owed.  As the court pointed out, claimant's suit was "not a suit on the note."  *Id.* at 517.  Therefore, the "harm for which damages were sought in this case related to the failure to timely perfect the security interest in the note" not the harm of receiving less on the note than what claimant otherwise should have.  *Id.*

[¶ 48]  In both *Bank of Sulphur Springs* and *DLA Piper*, the legal malpractice suits were based on claims that arose out of, but logically distinct from, the initial harm the claimant suffered.  In both cases there was an initial harm (malicious prosecution in *Smith* and note default in *Linegar*)  that would

be relevant to calculating *damages* in the malpractice suits, but the harms were distinct.

[¶ 49] Contrary to Preston Hollow's argument, neither opinion categorically holds that the disputed third-party designees could never have contributed to the relevant harms. *See Bank of Sulphur Springs*, 2016 WL 2586607, at *8 ("With no pleadings and no evidence that the Bank contributed to causing [the loss of Smith's cause of action], the Bank was not, by definition, a responsible third party."); *DLA Piper*, 539 S.W.3d at 517 ("DLA Piper did not assert at trial and does not assert on appeal that Zaychan or Key Ovation contributed to the untimely filing of the UCC-1 financing statement."). Accordingly, it was not relevant to the courts' analysis that the third parties were not attorneys because the responsible third parties need not violate the same legal standard or duty as the defendant. *See* ¶s 34–35.

[¶ 50] Finally, Preston Hollow relies on *Stabilis Fund II, LLC v. Compass Bank*, 2018 WL 4772411 (N.D. Tex. Oct. 3, 2018) to argue that "[a] borrower's contractual nonperformance … simply does not cause a trustee's breach of its own independent obligations."[32] In *Stabilis*, a buyer alleged it

---

[32] Opp. at 4.

was fraudulently induced into purchasing a loan because the seller concealed a loan modification agreement. The seller sought to designate the initial borrowers on the underlying loan as responsible third parties because they failed to maintain the collateral for the loan and failed to pay amounts due on the loan. The initial borrowers agreed to the concealed modification agreement but had no role in the alleged fraudulent concealment itself.

[¶ 51] First, the court denied the designation because the borrowers' failures to maintain the collateral or pay amounts due on the loan were not negligent or otherwise violate an applicable legal standard and therefore did not meet the statutory definition of a "responsible third party." *Id.* at *3–*4; CIV. PRAC. & REM. CODE § 33.011(6). In other words, the court appears to have assumed that because Chapter 33 primarily applies to tort causes of action— *see* § 33.002(a)(1)—a responsible third party cannot contribute to the harm by breaching a contract. Second, with respect to the fraudulent inducement and concealment claims, the court held that none of the borrowers' complained-of acts were reasonably connected to any of the seller's alleged fraudulent acts.

[¶ 52] Likewise, Preston Hollow asserts that Senior Care's and Bouldin's alleged defaults concern their contractual obligations (nonpayment,

tax issues, and diversion of funds) and thereby did not cause or contribute to Truist's own alleged misconduct (breach of fiduciary and breach of trust).[33]

[¶ 53]  The court disagrees with *Stabilis* to the extent it concluded that Chapter 33 applies to only jointly committed torts and that a potentially responsible third party cannot contribute to the harm for which recovery is sought by breaching a contract alone.  *See* 2018 WL 4772411, at *3–*4. However, "[a] duty is a legally enforceable obligation to conform to a particular standard of conduct and can be assumed by contract or imposed by law." *In re Luminant Gen. Co. LLC*, 711 S.W.3d 13, 21 (Tex. App.—1st Dist. 2023, orig. proceeding) (citation omitted).  Thus, violating an "applicable legal standard" as used in § 33.011(6) may include violation of the standards established by contract.  *See Eisenstadt v. Tel. Elecs. Corp.*, 2008 WL 4452999, at *3 (N.D. Tex. Sept. 30, 2008) (allowing designation of responsible third party where said party contributed to the claimed harm in part by breaching its contract).

---

[33] Opp. at 5.

[¶ 54]  Accordingly, the court concludes that Truist's motion connects Senior Care's and Bouldin's alleged acts to Preston Hollow's alleged harms, discussed further below.

### d.  Preston Hollow's Injury

[¶ 55]  The parties dispute the "harm" for which Preston Hollow is suing for.  Preston Hollow describes the harm as the loss of the fiduciary and trustee duties Truist owed to Preston Hollow, which Senior Care and Bouldin are not alleged to have contributed to because they were not fiduciaries/trustees.[34]  Truist describes the harm more broadly as "irretrievable deterioration of the trust estate."[35]

[¶ 56]  To begin, claimants may seek compensation (damages) for a variety of harms in a single lawsuit.  Nothing in Chapter 33 requires that the designated person caused or contributed to every harm for which the claimant seeks redress.  Rather, § 33.003(a) instructs the factfinder to determine the percentage of responsibility "as to each cause of action asserted."  A "cause of action" is a "group of operative facts giving rise to one or more bases for suing," CAUSE OF ACTION, BLACK'S LAW DICTIONARY (12th ed. 2024), and

---

[34] Opp. at 3.
[35] Motion at 11 (citing POP ¶ 1).

"thus [is] similar to a 'claim,'" and distinct from the overall "action" or lawsuit itself. *See Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 564 (Tex. 2014). Accordingly, if the individual contributed to at least one pled harm, they may be designated under the statute.

[¶ 57] Here, the court agrees that at least one harm for which Preston Hollow sues is "irretrievable deterioration of the trust estate,"[36] which Senior Care and Bouldin at least plausibly contributed to through their alleged unlawful actions.

[¶ 58] Second, Truist's motion connects Senior Care's and Bouldin's alleged acts to Preston Hollow's tort claims against Truist. For example, Preston Hollow's allegations concerning Truist's failure to monitor Senior Care and wrongful approval of Senior Care's failure to deposit gross receipts in the proper accounts necessarily relies upon acts by Senior Care.[37] Similarly, Preston Hollow's claim that Truist impermissibly advised Bouldin on asset protection strategies also required underlying acts by Bouldin.[38] So, through the nature of the acts themselves, Preston Hollow implicitly alleged that

---

[36] POP ¶ 1.
[37] Motion at 21–22.
[38] Motion at 22.

Senior Care and Bouldin contributed to the claimed harms by violating some legal standard.

[¶ 59]  Accordingly, taking Truist's allegations as true, Senior Care and Bouldin plausibly "caused or contributed to causing in any way the harm for which recovery of damages is sought" from Truist.  § 33.011(6).

### III.  CONCLUSION

[¶ 60]  In reaching these conclusions, the court (i) assumes the truth of Truist's factual allegations in its live pleadings and motion and (ii) makes no factual determinations or suggestions regarding whether Senior Care's or Bouldin's alleged misconduct occurred or the extent to which they could be responsible to Preston Hollow.

It is so ORDERED.

_____
BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED: February 2, 2026

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 110756248
Filing Code Description: No Fee Documents
Filing Description: Opinion Regarding Designation of Third Parties
Status as of 2/2/2026 4:31 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Eric Pinker | | epinker@lynnllp.com | 2/2/2026 4:21:00 PM | SENT |
| Mariela Cawthon | | mcawthon@lynnllp.com | 2/2/2026 4:21:00 PM | SENT |
| Jared Eisenberg | | jeisenberg@lynnllp.com | 2/2/2026 4:21:00 PM | SENT |
| John CharlesEichman | | john@eichmanfirm.com | 2/2/2026 4:21:00 PM | SENT |
| Hayden Hanson | | hhanson@lynnllp.com | 2/2/2026 4:21:00 PM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 2/2/2026 4:21:00 PM | SENT |
| Johnathan Watts | | jwatts@kslaw.com | 2/2/2026 4:21:00 PM | SENT |
| Zachary Coots | | zcoots@kslaw.com | 2/2/2026 4:21:00 PM | SENT |
| Sandi Staskus | | sstaskus@kslaw.com | 2/2/2026 4:21:00 PM | SENT |
| Alexis M.Watson | | awatson@kslaw.com | 2/2/2026 4:21:00 PM | SENT |
| Lawrence Slovensky | | lslovensky@kslaw.com | 2/2/2026 4:21:00 PM | SENT |
| Maria Gonzalez | | mgonzalez@lynnllp.com | 2/2/2026 4:21:00 PM | SENT |
| Sarah Johnston | | sjohnston@lynnllp.com | 2/2/2026 4:21:00 PM | SENT |