

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00020-CV

## IN THE INTEREST OF A.L.M.-F., A.M., J.A.-F., N.A.-F., AND E.A.-F., CHILDREN

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2015-3287-3**

## MEMORANDUM OPINION

Jessie F. appeals from a judgment that terminated the parent-child relationship between her and her children, A.L.M.-F., A.M., J.A.-F., N.A.-F., and E.A.-F. *See* Tex. Fam. Code Ann. §161.001 (West 2014). Jessie complains that the trial court abused its discretion by denying her the right to a jury trial for her de novo hearing and that the evidence was factually insufficient for the referring court to have found that termination was in the children's best interest. Because we find no reversible error, we affirm the judgment.

## JURY DEMAND

In her first issue, Jessie complains that the trial court abused its discretion by denying her jury demand. The final hearing in this proceeding was initially heard by an associate judge pursuant to Chapter 201, Subchapter E of the Family Code. *See* TEX. FAM. CODE ANN. Ch. 201, subch. E (West 2014). The hearing took place on September 7 and September 28, 2016. The associate judge advised the parties of the substance of her ruling on September 29, 2016. On September 30, 2016, Jessie filed a jury demand. On October 3, 2016, Jessie filed a request for a de novo hearing with the referring court on the issues of sufficiency of the evidence of the predicate grounds for termination and best interest. TEX. FAM. CODE ANN. § 201.015.

The referring court denied Jessie's jury demand on October 21, 2016 after a hearing. The final hearing before the referring court took place on October 27, 2016, which was within 30 days as required to conduct the hearing after the request. TEX. FAM. CODE ANN. § 201.015(f). The de novo hearing consisted solely of the transcript and exhibits as introduced from the trial before the associate judge. No other evidence or witnesses were presented.

Jessie argues that the jury demand was timely because it was filed when it was at least theoretically possible to conduct a jury trial within the thirty days after the request for the de novo hearing was made and because the referring court could have conducted a jury trial outside of the thirty days because it would not have lost jurisdiction over the

proceedings simply by not starting the de novo hearing within the thirty days. *See In re L.R.*, 324 S.W.3d 885, 889-90 (Tex. App.—Austin 2010, orig. proceeding); *Harrell v. Harrell*, 986 S.W.2d 629, 631 (Tex. App.—El Paso 1998, no pet.). Further, Jessie argues that because Section 201.015(i) states that a party may not demand a second jury in a de novo hearing before the referring court if the prior order rendered by the associate judge resulted from a jury trial, a jury trial in a de novo hearing is statutorily authorized. TEX. FAM. CODE ANN. § 201.015(i).

A trial court will not hold a jury trial unless a written request for a jury trial is filed with the clerk of the court "a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance." TEX. R. CIV. P. 216(a). We review a trial court's refusal to grant a jury trial for an abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). We examine the entire record and will find that an abuse of discretion exists if the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*

Even if we assume that Jessie can request a jury trial at this juncture in the proceedings and that her request for a jury was made a reasonable time before trial, we note that trial courts are not required to honor every jury request simply because it is received more than thirty days before trial. *Girdner v. Rose*, 213 S.W.3d 438, 443-44 (Tex. App.—Eastland 2006, no pet.). Rather, the timeliness of the request creates a rebuttable presumption that a jury demand should be granted. *Simpson v. Stem*, 822 S.W.2d 323, 324

(Tex. App.—Waco 1992, orig. proceeding). Courts have the discretion to determine how long is a reasonable amount of time dependent upon the individual circumstances of each case. *Id*. The party opposing a jury request may rebut the presumption of reasonableness by showing that a jury trial will injure them, disrupt the trial court's docket, or impede the ordinary handling of the court's business. *Crittenden v. Crittenden*, 52 S.W.3d 768, 769 (Tex. App.—San Antonio 2001, pet. denied).

At the hearing regarding the jury demand before the referring court, the Department objected to the jury demand because of the expense of bringing the three expert witnesses back to testify before the jury as well as the difficulty in recalling all of the witnesses and procuring interpreters again for several of the witnesses, which would cause injury to the Department. The attorney ad litem for the children also objected to the jury demand and expressed that a delay in the proceedings would cause turmoil and uncertainty for the children.

Jessie had proposed that a jury trial could be heard on October 31, November 1, and November 2, which would be within the thirty day window for the de novo hearing pursuant to Section 201.015(f). The record does not indicate if these dates were actually available for a jury trial in this matter.[1] However, these dates were only ten days from the date of the hearing regarding the jury demand.

---

[1] The Department contends that this Court should "use [our] personal knowledge of the crowded dockets in the district courts" in our determination of whether granting the jury demand would disrupt the trial court's docket or impede the ordinary handling of the court's business. We decline to do so.

Based on the facts of this proceeding, we do not find that the trial court abused its discretion by denying Jessie's jury demand. Because there was no abuse of discretion, we overrule issue one.

## BEST INTEREST

In her second issue, Jessie complains that the evidence was factually insufficient for the referring court to have found that termination of her parental rights was in the best interest of the children. In reviewing the factual sufficiency of the evidence, we give due deference to the factfinder's findings and do not supplant the factfinder's judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent-child relationship would be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2); *see In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

There are several nonexclusive factors that the trier of fact in a termination case may consider in determining the best interest of the child, which include: (a) the desires of the child, (b) the emotional and physical needs of the child now and in the future, (c) the emotional and physical danger to the child now and in the future, (d) the parental

abilities of the individuals seeking custody, (e) the programs available to assist these individuals to promote the best interest of the child, (f) the plans for the child by these individuals or by the agency seeking custody, (g) the stability of the home or proposed placement, (h) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (i) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d at 27. Some listed factors may be inapplicable to some cases while other factors not on the list may also be considered when appropriate. *Id*.

The Department became involved with Jessie when her twin sons were born and tested positive for marijuana. A FBSS (Family-Based Safety Services) case was opened which allowed Jessie to retain custody of the children under the supervision of her relatives. She was required to take drug tests and some classes. She did not participate in the classes and some of her drug tests were positive. At times, Jessie and the children lived at her grandmother's residence, which was unsafe for children and tremendously unsanitary, with issues such as broken windows, exposed wires, live roaches and rodents, rotten food on the floors, mattresses laying in corners, and a smell like rotten meat. Additionally, throughout their lives, the children had been exposed to domestic violence between Jessie and the children's fathers. Once, one of the children had been hit in the mouth while Jessie was holding her during a fight with her significant other.

When the children were removed, the youngest three were placed with their

paternal grandmother and were in need of medical attention. One child had a fever and lice and another had a rash, ringworm, and boils due to inadequate hygiene and nits on his head. The third child had a small bruise and nits in her hair. The two oldest children were placed with their paternal great-grandparents. Both of the older children had lice and one had sores on her back. Both of the older children were dirty.

During the proceedings, Jessie completed a psychosocial evaluation but did not complete a recommended psychological evaluation. She was very sporadic in attending counseling and attended parenting classes but did not successfully complete them. Jessie violated the Department's rules during visits and attempted to have visits at times and places not authorized by the Department. She tested positive for drugs during the case. She was pregnant with her sixth child at the time of the final hearing but did not know who the father was. Jessie referred to her current pregnancy as a "disease" and demonstrated a lack of care and concern for her children, even stating at one point that she did not miss her children and was not interested in being a parent. It was Jessie's plan to move in with her sister and her four children if the children were returned to her even though her sister's lease clearly stated that no other residents were allowed.

Jessie did become more serious about working on her service plan in the 45 days prior to the final hearing; however she missed two therapy appointments during the almost month-long gap between the dates of the final hearing. Throughout the case, Jessie blamed her circumstances on others and did not stop using marijuana until

approximately eight months after the removal. Jessie was arrested for stealing from Dillard's after the children had been removed by the Department.

All five of the children were doing well with their relative placements, and their caregivers were wanting to adopt them. The caregivers had a friendly relationship with each other and would ensure contact between the siblings would continue. The older two children were in therapy due to the hardships they had suffered with their mother. While they stated that they loved their mother, they wanted to remain where they were and became very upset at the idea of going back to their mother's care. The children were all clean and healthy in their placements.

During the time the children were placed with their grandmothers, there were individuals who were allowed around the children that the Department did not consider appropriate. Both grandmothers testified that those individuals were not allowed around the children again after being warned by the Department and would not be allowed around them in the future. Both also agreed that the children's fathers would not be around the children. One was living in Mexico and would not return. The other father was in prison.

The evidence of Jessie's past and present instability, lack of a safe and suitable residence, refusal to complete her service plan, and ongoing drug use taken with the children's substantial positive improvement in their circumstances from when they were in their mother's care was factually sufficient for the referring court to have found that

termination of the parent-child relationship was in the best interest of the children. We overrule issue two.

## CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed June 14, 2017
[CV06]

