

# IN THE
# TENTH COURT OF APPEALS

## No. 10-21-00272-CV

## IN THE INTEREST OF A.S., A CHILD

### From the 74th District Court
### McLennan County, Texas
### Trial Court No. 2020-1309-3

## MEMORANDUM  OPINION

The mother (Mother) and father (Father) of A.S. appeal the final judgment terminating their parental rights.  We will affirm.

### Background

The Department of Family and Protective Services (the Department) became involved with A.S.'s family when law enforcement was called to their residence in Tarrant County after a physical altercation between Mother and her older daughter in early 2019.[1]  A.S., who was one year old, was present.  Father was not present as he had

---

[1] The Department also moved to terminate Mother's and Father's parental rights as to the older daughter, and both cases were tried simultaneously before the associate judge.  No appeal or request for *de novo* review was made after the associate judge denied the Department's requests for termination as to the older daughter.

been incarcerated in California since before A.S.'s birth. A.S.'s family was referred to the Department's Family Based Safety Services, and Mother agreed to voluntarily place A.S. with Mother's mother (Grandmother). Another altercation between Mother and her older daughter resulted in a Department-implemented safety plan requiring Mother's contact with A.S. to be supervised by Grandmother. When an unapproved family member moved in with Grandmother, A.S. was placed, at Mother's request, with a family friend. The family friend was unable to care for A.S. on a long-term basis, and A.S. was placed with Mother's maternal cousin (Cousin) in Hill County. Mother and her son moved to McLennan County in November 2019. Due to Mother's ongoing use of methamphetamine, the Department filed its original petition for conservatorship and termination on January 29, 2020 in Hill County. An Order for Protection was signed the same day, and A.S. was placed in the temporary managing conservatorship of the Department. The Department placed A.S. in an unrelated foster home in April 2020, where she has remained while the termination action is pending. The termination suit was then transferred to McLennan County. The original goal was family reunification, with a concurrent permanency goal of unrelated adoption. The goal changed to unrelated adoption due to Mother's continued use of methamphetamine and refusal to cooperate with the Department.

The case was referred to an associate judge. On April 28, 2021, Mother filed a withdrawal of her request for a trial by jury that she asserted had been filed on

November 2, 2021.[2]  On June 2, 2021, Mother filed her second request for a jury trial, and she filed a Request to Revoke Withdrawal of Jury Trial the following day.  After a hearing on June 11, 2021, the referring court denied Mother's request to place the final termination hearing on the jury docket.

The associate judge conducted the final termination hearing on July 19, 2021, and issued a letter ruling on July 21, 2021 that denied the Department's request to terminate the rights of Mother and Father.  However, the associate judge appointed the Department as the sole managing conservator of A.S. and approved the placement of A.S. with the foster family.

The Department filed a request for a *de novo* hearing before the referring court. Both Mother and Father objected to the Department's request.  Both Mother and Father argued that the Department's request failed to state with specificity the issues to be reviewed, and Mother additionally argued that the Department failed to request that the associate judge issue findings of fact and conclusions of law.  The referring court orally denied both objections on August 20, 2021, and the *de novo* hearing commenced the same day.  The *de novo* hearing concluded on October 14, 2021.

At the *de novo* hearing, the Department orally requested termination of Mother's parental rights under subsections (D), (E), and (O) and requested termination of Father's rights under subsection (N).  The *ad litem* concurred with the Department's request, but additionally requested termination of Father's rights under subsection (E). The referring court issued a letter ruling on October 15, 2021 that expressed the intent to

---

[2] The request for a jury trial is not part of the clerk's record.

grant the Department's request for termination of the parental rights of both Mother and Father. Mother filed a notice of appeal on October 29, 2021. The referring court signed an Order of Final Termination on December 9, 2021.[3] Father filed a notice of appeal on December 15, 2021. The referring court then signed a Nunc Pro Tunc Final Order of Termination on December 16, 2021, noting that the cause number was incorrect on the Final Order of Termination. The Nunc Pro Tunc Order terminated Mother's parental rights due to violations of subsections (D), (E), (O), and (P), terminated Father's rights due to violations of subsections (D), (E), and (N), and found that termination of their rights was in A.S.'s best interest.

## Issues

Mother raises two issues: (1) the referring court abused its discretion by denying Mother the right to a jury trial while conducting a trial *de novo* rather than a *de novo* hearing; and (2) the referring court should protect a parent's right to a jury trial when the Department seeks termination of a parent's rights through a *de novo* review.

In one issue, Father asserts that the evidence was not sufficient to support a finding that his parental rights should be terminated.

## Mother's Issues One and Two

AUTHORITY

The trial court's denial of a jury demand is reviewed for an abuse of discretion. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). "A trial court abuses its discretion when

---

[3] The Final Order of Termination is not part of the clerk's record in this case. A copy of the signed and unfiled Final Order of Termination is attached to Mother's appellate brief.

a 'decision is arbitrary, unreasonable, and without reference to guiding principles.'" *Id.* (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)).

Under the Rules of Civil Procedure, a jury demand must be filed with the clerk of the court no less than thirty days in advance of the trial date. TEX. R. CIV. P. 216(a). A timely request creates a rebuttable presumption that a jury demand should be granted. *In re A.L.M.-F.*, 564 S.W.3d 441, 444 (Tex. App.—Waco 2017), *aff'd*, 593 S.W.3d 271 (Tex. 2019) (citing *Simpson v. Stem*, 822 S.W.2d 323, 324 (Tex. App.—Waco 1992, orig. proceeding)). However, the trial court has the discretion to determine what constitutes a reasonable amount of time depending upon the circumstances of each case. *Id.* The opposing party may rebut the presumption by showing that a jury trial will cause injury, will disrupt the trial court's docket, or will impede the ordinary handling of the court's business. *A.L.M.-F.*, 593 S.W.3d at 283.

The Family Code provides that a party may request a *de novo* hearing before the referring court after a ruling by an associate judge in a termination case. TEX. FAM. CODE ANN. § 201.015. The *de novo* hearing is not a "trial *de novo*," which "is a new and independent action in the reviewing court with 'all the attributes of an original action' as if no trial of any kind has occurred in the court below." *A.L.M.-F.*, 593 S.W.3d at 277 (quoting *Key W. Life Ins. Co. v. State Bd. of Ins.*, 163 Tex. 11, 350 S.W.2d 839, 846 (1961)). "[T]he term '*de novo* hearing' appears to bear a special meaning that is relatively unique to the associate-judge referral statutes and governed by the procedures specified in the authorizing statutes." *A.L.M.-F.*, 593 S.W.3d at 277. The procedures applicable to a section 201.015 *de novo* hearing are inconsistent with the established understanding of a

trial *de novo* mainly because the *de novo* hearing is not entirely independent of the proceedings before the associate judge. *Id*. at 278. The *de novo* hearing is not an entirely new and independent action, but an extension of the original trial on the merits before the associate judge. *Id*. at 280.

The *de novo* hearing encompasses only those issues specified in the motion requesting a *de novo* hearing before the referring court. *Id*.; TEX. FAM. CODE ANN. § 201.015(b). There is nothing in the statute that precludes a party from requesting review of all issues that were raised in the trial on the merits or from calling witnesses regarding those issues at the *de novo* hearing. *See In re L.R.*, 324 S.W.3d 885, 890 n.5 (Tex. App.—Austin 2010, orig. proceeding) (raising all issues); *In re R.R.*, 537 S.W.3d 621, 624 (Tex. App.—Austin 2017, orig. proceeding) (calling witnesses).

A party may request a jury at the *de novo* hearing. *See* TEX. FAM. CODE ANN. § 201.015(i). However, a party is not entitled to a jury at a *de novo* hearing "if the associate judge's proposed order or judgment resulted from a jury trial." *Id*. It is discretionary with the referring court whether to grant a first-time jury trial in a *de novo* hearing. *A.L.M.-F.*, 593 S.W.3d at 282.

DISCUSSION

As we have previously held, an appellant's failure to show that dates are available on the court's docket for a jury trial supports the denial of a jury. *A.L.M.-F.*, 564 S.W.3d at 444. The record does not reflect that Mother established that any dates were available on the jury docket before the associate judge within the thirty days after her renewed jury demand was made.

Additionally, both the Department and A.S.'s attorney *ad litem* argued that delaying the case to put it on the jury docket would be harmful to A.S. due to the lack of resolution. Mother presents nothing to rebut this potential injury to A.S.

Also, Mother was not absolutely denied the right to a jury trial. Mother's jury request filed before the final termination hearing was untimely, and she did not request a jury for the *de novo* hearing.

Finally, the procedures followed by the referring court at the *de novo* hearing did not transform the proceeding into a trial *de novo*.

Mother was not deprived of her right to a jury trial prior to the termination of her parental rights, and the referring court did not abuse its discretion in denying Mother's renewed request for a jury after her voluntary withdrawal. Mother's first and second issues are overruled.

## Father's Issue

The evidence before the referring court at the *de novo* hearing[4] as it relates to Father reflects that Father was incarcerated in California prior to A.S.'s birth for domestic violence against Mother and that Father remained incarcerated until he was

---

[4] Our review must consider only the evidence that was before the referring court at the *de novo* hearing when the referring court did not consider the record from the trial before the associate judge in reaching a decision in the case. *See In re A.M.H.-C.*, No. 10-21-00029-CV, 2021 WL 4462430, at *1 n.2 (Tex. App.—Waco Sept. 29, 2021, pet. denied) (mem. op.); *see also In re J.R.*, No. 07-18-00240-CV, 2018 WL 7488914, at *1 (Tex. App.—Amarillo Sept. 26, 2018, no pet.) (mem. op.). The reporter's record or a transcript from the trial before the associate judge was never offered or admitted as evidence at the *de novo* hearing. In a letter to counsel after the *de novo* hearing, the referring court stated: "On August 20 and October 14, 2021, the Court conducted a *de novo* final hearing in this case. At the conclusion of the hearing, I took the ruling under consideration. *After considering this matter and reviewing the evidence admitted*, I have reached a decision on the contested issues." [Emphasis added.] While the referring court submitted the reporter's record from the final termination hearing before the associate judge at our request, we did not consider it in evaluating this appeal.

paroled in January 2021. Mother testified that she found out she was pregnant with A.S. one day after Father was "locked up." The caseworker testified that Father told her when he was first paroled that he did not have the means to care for his children because he was just getting on his feet. The caseworker testified that she did not create a family service plan for Father before or after Father was paroled because he would have been required to pay for such services on his own and did not have the financial resources to do so.

The caseworker and the foster mother testified that Father participated in two video calls with A.S. while A.S. was in foster care. These are the only contacts Father had with A.S. after her birth. Father initiated the first call through the Department, and the caseworker provided the contact information. The foster mother then contacted Father and set up a face-to-face call through Google Duo in March 2021. The foster mother testified that she and Father set up a weekly time for future calls but Father never called back despite having the correct contact information. The foster mother initiated another call with Father on July 19, 2021 after the final termination hearing had concluded. Father did not attempt further contact with A.S. through the foster parents or through the Department.

Mother testified that Father sent letters and cards to her and Cousin for the "children" but none of those were admitted as evidence at the *de novo* hearing. Mother further testified that she never gave any of the correspondence to either the Department or the foster parents to give to A.S. Mother testified, "I still have all of it for her for when she gets a little older and be [sic] able to read them and understand." Father

never sent any correspondence directly to A.S. through the foster family or through the Department, although he possessed the appropriate contact information.

The caseworker further testified that Father made no requests for visits with A.S. in Texas or California. Father was prohibited from leaving California as a condition of his parole, but Father did not request that the Department assist in facilitating A.S.'s transportation to California for visitations. The caseworker indicated that such a request would have been considered, although Father would be required to pay for any such visitation. Father did not provide the caseworker with any information regarding his living arrangements, his employment, or his financial situation despite her request. Father also failed to provide the caseworker with documentation regarding the conditions of his parole and his compliance with those conditions. Father additionally admitted to the caseworker that he smokes marijuana because it is legal in California.

The caseworker further testified that reunification between A.S. and Father would not be in A.S.'s best interest because A.S. thinks of the foster family as her own. The foster parents testified that they want to adopt A.S., who has bonded with their family after living with them for nineteen months. The Department representatives testified that the foster home was appropriate, that A.S. loved the foster family, and that the foster family loved A.S. The foster parents testified that they are willing to allow both parents to maintain a relationship with A.S.

AUTHORITY

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department must establish by clear and convincing

evidence two elements: (1) that the respondent parent committed one or more acts or omissions enumerated under subsection (b)(1), termed a predicate violation, and (2) that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.-G.*, 612 S.W.3d 373, 382 (Tex. App.—Waco 2020), *aff'd,* 627 S.W.3d 304 (Tex. 2021). Proof of one element does not relieve the petitioner of the burden of proving the other. *Id*.  "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980).

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here.  *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009). We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder.  *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony."  *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

If multiple predicate violations are found by the factfinder, we will affirm based on any one ground because only one ground is necessary for termination of parental rights.  *See In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021).  However, when a parent's rights are terminated under subsections (D) or (E), the appellate court must evaluate the

sufficiency of the evidence to support those grounds even if there is sufficient evidence to support a separate ground. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019). This is due to the implications for termination of a parent's rights to other children under subsection (M) when a parent's rights are terminated under (D) or (E). *Id*. at 234; TEX. FAM. CODE ANN. § 161.001(b)(1)(M).

Termination under subsection (D) requires clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Termination under subsection (E) requires clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Because the evidence pertaining to subsections (D) and (E) are interrelated, "we may conduct a consolidated review." *In re S.B.*, 597 S.W.3d 571, 582-83 (Tex. App.—Amarillo 2020, pet. denied); *In re J.W.*, 627 S.W.3d 662, 672 (Tex. App.—Waco 2019, no pet.) (on reh'g). Subsections (D) and (E) require proof of endangerment, which means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). While "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*; *see J.W.*, 627 S.W.3d at 671.

Subsection (D) requires examination of the evidence as it relates to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). When termination is based upon subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). Subsection (D) permits termination based upon only a single act or omission. *In re L.E.S.*, 471 S.W.3d 915, 925 (Tex. App.—Texarkana 2015, no pet.). Termination under subsection (E) must be based on more than a single act or omission; "a voluntary, deliberate, and conscious course of conduct by the parent is required." *M.R.J.M.*, 280 S.W.3d at 502.

The endangerment to a child may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533. In making this determination, a factfinder court may consider conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department. *J.O.A.*, 283 S.W.3d at 345. A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *See In re J.S.S.*, 594 S.W.3d 493, 505 (Tex. App.—Waco 2019, pet. denied).

Neither a conviction nor imprisonment, standing alone, will constitute engaging in conduct that endangers the emotional or physical well-being of a child although both

are appropriate to consider.  *J.F.-G.*, 627 S.W.3d at 312-13; *M.R.J.M.*, 280 S.W.3d at 503.

However, it is a factor that the trial court may weigh when considering endangerment.

*J.F.-G.*, 627 S.W.3d at 313.  "[W]hen a parent is incarcerated, he or she is absent from the

child's daily life and unable to provide support to the child, negatively impacting the

child's living environment and emotional well-being."  *M.R.J.M.*, 280 S.W.3d at 503.

A parent's history of criminal activity, illegal drug use, and domestic violence are

also among the types of actions or omissions that subject a child to a life of uncertainty

and instability.  *See E.M.*, 494 S.W.3d at 222 (domestic violence; illegal drug use; drug-

related criminal activity); s*ee also J.O.A.*, 283 S.W.3d at 345 (use of illegal drugs); *In re

S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.) (criminal conduct); *In re

C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied) (domestic violence).

Constructive abandonment under subsection (N) requires clear and convincing

evidence of four elements:  (1) the child was in the conservatorship of the Department

for not less than six months; (2) the Department made reasonable efforts to return the

child to the parent; (3) the parent did not regularly visit the child or maintain significant

contact with the child; and (4) the parent demonstrated an inability to provide the child

with a safe environment.  TEX. FAM. CODE ANN. § 161.001(b)(1)(N).  Incarceration alone

does not establish constructive abandonment.  *In re A.R.*, No. 07-19-00403-CV, 2020 WL

1482454, at *3 (Tex. App.—Amarillo Mar. 26, 2020, pet. denied) (mem. op.).  However,

subsection (N) can be applied to incarcerated parents.  *Id.* (citing *In re M.D.P.*, No. 11-18-

00146-CV, 2018 WL 6053931, at *3, (Tex. App.—Eastland Nov. 20, 2018, no pet.) (mem.

op.)); *see also In re J.M.*, No. 12-19-00353-CV, 2020 WL 1528054, at *3 (Tex. App.—Tyler

Mar. 31, 2020, no pet.) (mem. op.). Under the second element, "[r]eturning the child to the parent . . . does not necessarily mean that the child has to be physically delivered" to the parent. *In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.). The Department is only required to make reasonable efforts, not ideal efforts. *In re F.E.N.*, 542 S.W.3d 752, 767 (Tex. App.—Houston [14th Dist.] 2018), *pet. denied*, 579 S.W.3d 74 (Tex. 2019) (*per curiam*); *see also In re S.P.*, No. 09-21-00296-CV, 2022 WL 318441, at *7 (Tex. App.—Beaumont Feb. 3, 2022, no pet. h.) (mem. op.); *In re D.P.G.*, No. 05-20-00652-CV, 2021 WL 2472717, at *9 (Tex. App.—Dallas June 17, 2021, no pet.) (mem. op.).

In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's *Holley* opinion. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* at 372. There is no requirement that all of the factors be proved as a condition precedent to termination, and the absence of evidence regarding some factors does not preclude a factfinder from determining that termination is in a child's best interest. *C.H.*, 89 S.W.3d at 27. Evidence establishing one of the predicate grounds under section 161.001(b)(1) also may be relevant to determining the best interest of the child. *Id.* at 27-28.

When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

DISCUSSION

Father argues that the Department failed to prove that he abandoned A.S. because the record reflects that he was interacting with A.S. prior to the Department's involvement with his family. Father's argument is not supported by the record before the referring court. Both Mother and the caseworker testified that none of Father's correspondence to A.S. actually reached A.S. The only evidence in the record is that Father's contact and involvement with A.S. during her lifetime consisted of two video chats.

Father also argues that the Department did not take reasonable steps to re-unite him with A.S. However, the record before the referring court reflects that Father did not have the financial ability to care for A.S. after he was paroled or the ability to pay to have A.S. transported to California for visits. Further, Father made no request of the Department to attempt such visits. The evidence before the referring court is legally and factually sufficient to support a finding of a violation of subsection (N).

Father's behavior also supports the referring court's finding that the Department proved by clear and convincing evidence that Father violated subsection (E).[5] Father exhibited a course of conduct that endangered A.S.'s physical and emotional well-being due to Father's violence against Mother, his incarceration, his inability to provide financial support, and his continuing use of illegal drugs.[6] Other than the fact of his

---

[5] Because we find the record supports a finding of violation of subsection (E), we will not address subsection (D). Neither the Department nor the *ad litem* requested termination under subsection (D) at the *de novo* hearing.

[6] Unrestricted use of marijuana is legal under California law but not under Texas law.

incarceration, there is nothing in the record to reflect that Father was involved in any programs to address those problems. Father additionally exhibited little emotional attachment to A.S. in that his only contact with her during her life were two video chats. The evidence before the referring court is legally and factually sufficient to support a finding of a violation of subsection (E).

The record also supports the referring court's finding that termination of Father's parental rights is in A.S.'s best interest. The evidence supporting violations of subsections (N) and (E) support a finding that Father's behavior constitutes emotional and physical danger to A.S. now and in the future and a lack of ability to meet A.S.'s emotional and physical needs now and in the future. While A.S. is too young to make her desires known, the evidence before the referring court reflects that Father is a stranger to her, that she considers the foster family her own family, and that she is happy and well cared for in the foster home. The foster family plans to adopt A.S. if Mother's and Father's parental rights are terminated as they love A.S. and A.S. has fully integrated into their family. Finally, there is nothing in the record to reflect Father's parenting abilities, his plans for A.S., or any excuse there may be for his acts or omissions. We overrule Father's sole issue.

## Conclusion

As we have overruled Mother's two issues and Father's sole issue, we affirm the Nunc Pro Tunc Final Order of Termination signed by the referring court on December 16, 2021.

MATT JOHNSON
Justice


Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed April 6, 2022
[CV06]

