**Opinion filed October 23, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-25-00102-CV

_____

## IN THE INTEREST OF D.M., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11291-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from a final order in which the trial court terminated the parental rights of the mother and alleged father of D.M.[1]  Only the mother has appealed.  On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's (1) findings under Section 161.001(b)(1)(D), (E), and (O)[2] of the Texas Family Code, and (2) finding that termination of her

---

[1]To protect the child's identity, we use initials to refer to the child.  *See* TEX. R. APP. P. 9.8(b).

[2]We note that the legislature amended Section 161.001(b)(1) and repealed subsection (O) effective September 1, 2025.  Act of May 16, 2025, 89th Leg., R.S., ch. 211, § 2, 4, 2025 Tex. Sess. Law Serv. 573,

parental rights is in the child's best interest.  *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (O), (b)(2) (West Supp. 2024).  Appellant further challenges the trial court's denial of her motion for continuance and demand for a jury trial.  We affirm the trial court's order.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence.  FAM. § 161.001(b).  To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child.  *Id.* § 161.001(b)(2).  Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the child, who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the child's removal under Chapter 262 for abuse or neglect.  *See id.* § 161.001(b)(1)(D), (E), (O).  The trial court further found, pursuant to

---

574–75.  This change in the law only applies to suits affecting the parent-child relationship that are pending on or after the effective date of this statutory amendment.  *Id.* § 3.  Thus, we apply the law in effect at the time the suit was pending below.

Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and we recognize that the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266 then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, based on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—

3

Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best-interest finding, the Department is not required to prove the applicability of each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *J.S.*, 687 S.W.3d at

4

548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure and compare a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the child's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *The Evidence Presented at Trial*

On January 3, 2024, law enforcement notified the Department that Appellant was "yelling and cussing" at then-five-year-old D.M., "who was sitting on a curb crying." When Department investigator Alyssa Jones arrived, she observed that Appellant was "very agitated and very abrasive." Appellant told Jones that she yelled and cursed at D.M. "because she wouldn't get off the curb," and that she considered contacting the Department herself. Appellant informed Jones that "she didn't give two s---s" whether D.M. stayed with her or was removed and placed in foster care.

Jones discussed implementing a safety plan with Appellant, but she did not have a permanent residence or a relative who could care for the child. They had lived with Appellant's mother for a brief period following Appellant's release from prison in November 2023. But in mid-December 2023, they left her mother's home to stay "[w]ith friends here and there," and had been "bouncing from home to home" since then. Appellant "said she was staying with a man" that night but refused to provide his name or contact information. When Jones spoke to D.M., the child revealed that she was scared and did not want to leave with Appellant. Concerned for D.M.'s safety, the Department removed the child and placed her in a foster home.

The Department created a family plan of service for Appellant, which was approved and adopted as an order of the trial court in March 2024. A few weeks before the status hearing, Appellant tested positive for methamphetamine, although she consistently tested negative for drug use for the next several months. Appellant completed her required counseling, parenting classes, stayed in contact with her caseworker, maintained steady employment, and attended all but one visit with D.M. Because of her compliance, on August 21, 2024, the trial court signed an agreed order for the monitored return of D.M. *See* FAM. § 263.403(a). However, Appellant permitted her brother to stay with her and D.M. in October without the Department's approval, and D.M. tested positive for "very high levels" of methamphetamine the following month. The trial court terminated the monitored return on November 22, 2024, and extended the dismissal deadline to May 21, 2025. Appellant later revealed that her brother also struggled with substance abuse, specifically with methamphetamine and marihuana, and she attributed D.M.'s positive drug test to her brother's illegal drug use while in their home. Once D.M. returned to the foster home, Appellant stopped submitting to drug testing because, according to her, she "[didn't] stand a chance" of avoiding termination after that.

Eight days before the parties were to appear for the final hearing on April 15, 2025, Appellant filed an untimely jury demand and a motion for continuance. *See* TEX. R. CIV. P. 216(a). The trial court explained that "this Court and the referring district court's schedules are extraordinarily busy[,] and trying to -- in addition to being untimely, trying to . . . schedule a jury trial before the dismissal deadline would not be feasible." As such, the parties proceeded with the final termination hearing before the trial court.

The Department presented evidence of Appellant's years of substance abuse, criminal history, and history with the Department. Appellant began using methamphetamine and marihuana in 2014 and resumed using methamphetamine three and one-half weeks after her release from prison. Appellant initially claimed to have been sober since January 3, 2024, the date of D.M.'s removal, but eventually admitted that she "went and got high" after the Department removed D.M. She was also assaulted by her boyfriend later that month, and conceded, "apparently, I have terrible taste in men."

Appellant recounted her history with the Department. In July 2016, the Department removed Appellant's two-year-old son, A.H., because of Appellant's methamphetamine use and her attempted suicide. During the monitored return, Appellant tested positive for methamphetamine and cocaine and left A.H. in a known drug house while she was "highly intoxicated." Appellant's parental rights to A.H. were terminated in October 2017, nine months before she gave birth to D.M. in July 2018. Then in February 2019, when D.M. was eight months old, Appellant was arrested for the state jail felony offense of possession of methamphetamine (she was subsequently placed on deferred adjudication community supervision). Soon after Appellant's arrest, D.M. tested positive for methamphetamine, and the Department removed her from Appellant's care.

7

In June 2020, the Department closed its case because Appellant completed her service plan requirements to regain custody of D.M. and she had been complying with the conditions of her community supervision. Weeks later, Appellant tested positive for methamphetamine in violation of her community supervision conditions. She also stopped reporting to her community supervision officer in August 2022 and was convicted in March 2023 of criminal trespass and evading arrest. Upon completing her sixty-day jail sentence for those misdemeanor offenses, Appellant was adjudicated guilty in May 2023 of the state jail felony methamphetamine possession charge, her community supervision was revoked, and she was transferred to a state jail facility where she remained until her release in November 2023.

During Appellant's confinement in the state jail facility, D.M. lived with Appellant's mother, who also had a criminal history and struggled with methamphetamine addiction. According to Appellant, her mother had been sober for several years but relapsed while caring for D.M. in Appellant's absence.

Permanency case manager Michaela Hill testified that D.M. is "doing well" in her foster home, is "happy there, and she is very comfortable with all of the family members and the dogs." D.M.'s foster parents have cared for her since removal and after the monitored return ended and hope to adopt her. D.M. is receiving speech therapy, weekly counseling, and is being tested for dyslexia, but has no other known medical issues. Hill described D.M. as "a very bright child" who "loves to go to school."

The Department recommended terminating Appellant's parental rights for D.M.'s "immediate and long-term safety" because Appellant could not provide a safe and stable home for the child. Hill acknowledged that Appellant and D.M. "are

bonded and love each other," but that it was in the child's best interest to stay with her foster family with the goal of adoption.

Appellant also agreed that it would not be in D.M.'s best interest for her to return to Appellant's care "with [her] mental state of mind at the moment," because she was "really struggling with depression." She also explained why she refused to submit to drug testing after the monitored return ended:

> I've given up. I already know the outcome . . . losing my rights to my kid. . . . [T]his isn't my first go around. I have a CPS history. . . . I don't see y'all re-removing her, coming to trial, and y'all giving her back to me and closing my case.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of D.M. *See* FAM. § 161.0001(b)(1)(D), (E), (O), (b)(2). This appeal followed.

### III. *Section 161.001(b)(1)(D) and (E) – Endangerment*

In her first issue, Appellant challenges the sufficiency of the trial court's findings that she endangered D.M. *See id.* § 161.001(b)(1)(D), (E). Although only one statutory ground is necessary to support termination, appellate courts must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1)(M); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either ground). Thus, if we conclude that the evidence is legally and factually sufficient to support the trial court's finding for either subsection (D) or (E), we need not address the trial court's findings as to the remaining subsections that the trial court found were violated. *See* FAM. § 161.001(b)(1); TEX. R. APP. P. 47.1. And when the evidence pertaining to both

9

subsections (D) and (E) is interrelated, as it is here, we may conduct a consolidated review of the trial court's endangerment findings. *See In re A.L.S.*, 660 S.W.3d 257, 263–64 (Tex. App.—San Antonio 2022, pet. denied); *J.D.*, 436 S.W.3d at 114; *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," or "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). "[E]ndangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The term means "more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment," but "does not require actual harm." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *see R.R.A.*, 687 S.W.3d at 277 (citing *Boyd*, 727 S.W.2d at 533).

To terminate a parent's rights for endangerment under subsections (D) or (E), the "parent's endangering conduct need not 'be directed at the child,'" nor must "the child actually suffer[] injury." *R.R.A.*, 687 S.W.3d at 277 (quoting *Boyd*, 727 S.W.2d at 533); *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024). "[T]ermination under [subsection] (D) requires that the child's environment is a source of endangerment, and the parent's conduct may create that dangerous environment." *C.E.*, 687 S.W.3d at 310. "A parent's drug use, violence, or other abuse may make the child's environment endangering to the child." *In re J.S.*, 675 S.W.3d 120, 128 (Tex. App.—Dallas 2023, no pet.). "A parent acts 'knowingly' when the parent is aware

10

that the environment creates a potential danger to the child but the parent disregards that risk." *Id.* Because conditions or surroundings cannot endanger a child unless the child is exposed to it, the relevant time frame for evaluating the application of subsection (D) is before the child's removal. *J.W.*, 645 S.W.3d at 749.

Endangerment under subsection (E), in contrast, focuses on the parent's conduct, and whether the endangerment of the child's well-being was the direct result of the parent's acts, omissions, or failures to act. *J.S.*, 687 S.W.3d at 550. Termination under subsection (E) must be based on more than a single act or omission; rather, a voluntary, deliberate, and conscious course of conduct by the parent is required. *J.S.*, 687 S.W.3d at 550; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being." *R.R.A.*, 687 S.W.3d at 277. "[E]ndangerment under Subsection (E) . . . 'does not require [that the parent's conduct] directly harm the child.'" *In re N.L.S.*, 715 S.W.3d 760, 764 (Tex. 2025) (quoting *R.R.A.*, 687 S.W.3d at 278). Further, a parent's actions prior to and after the child's removal may show an endangering course of conduct. *See J.S.*, 687 S.W.3d at 550 ("[E]ndangering conduct may include a parent's actions before the child's birth and may relate to the parent's actions while the parent had possession of other children."). "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (Illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct that endangers a child.); *see N.L.S.*, 715 S.W.3d at 765.

Contrary to Appellant's contention that there is "absolutely no evidence" of endangerment, her testimony alone established that she engaged in an endangering course of conduct and knowingly allowed D.M. to remain in an endangering environment. *See J.F.-G.*, 627 S.W.3d at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Appellant's decade use of drugs and its effects on her ability to parent demonstrated an endangering course of conduct. *See J.O.A.*, 283 S.W.3d at 345; *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and incapable of parenting."). "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *R.R.A.*, 687 S.W.3d at 278. "A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *Id.* (quoting *J.O.A.*, 283 S.W.3d at 345). Thus, under certain circumstances, such as those that are present in this case, "any drug activity may render the parent incapable of parenting." *J.S.*, 687 S.W.3d at 554 (citing *R.R.A.*, 687 S.W.3d at 278).

Appellant's protracted pattern of drug use contributed to the termination of her parental rights to her son, A.H., in 2017. *See In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) (The "factfinder may consider prior CPS history of neglect, drug use, or lack of care for the children."). It also resulted in her 2019 arrest and the first removal of D.M. after the child tested positive for methamphetamine. Immediately after the Department closed its case in June 2020, Appellant resumed using methamphetamine, despite being on community supervision for felony drug

12

possession. Her drug-related criminal conduct culminated in her confinement in a state jail facility for approximately nine months in 2023. Appellant knew that her mother struggled with methamphetamine addiction, but, during her confinement, she nevertheless left D.M. in her mother's care, who subsequently relapsed. Additionally, Appellant's drug use persisted after her release from prison and D.M.'s removal. Such drug-related criminal conduct and the failure to remove D.M. from an endangering environment support the trial court's endangerment findings. *See J.F.-G.*, 627 S.W.3d at 315–17; s*ee J.G. v. Tex. Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 524 (Tex. App.—Austin 2019, no pet.); *In re A.L.H.*, 468 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Appellant attempts to distinguish the present case from her past engagement in services: "[F]or the first time in my whole life I actually wanted to get sober." In her previous cases with the Department, her intention was to complete her service plan requirements "just to check the box and get [the Department] out of [her] life." She never took it seriously until now: "I've never cared, I guess, to really try to get sober . . . this case I kind of took serious." Yet, Appellant's responsibility as a parent was not limited to maintaining her own sobriety—permitting her brother, a known drug user, to live with her and D.M. during the monitored return created conditions or surroundings that endangered D.M.'s physical and emotional well-being. *See In re K.G.*, No. 11-24-00236-CV, 2025 WL 477650, at *5–6 (Tex. App.—Eastland Feb. 13, 2025, no pet.) (mem. op.) ("A parent's decision to leave a child in the care of a known drug user subjects the child to a life of uncertainty and instability that endangers the child's physical and emotional well-being."); *E.G. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00469-CV, 2022 WL 17970222, at *9 (Tex. App.—Austin Dec. 28, 2022, no pet.) (mem. op.) (The father endangered the child by leaving the child with the mother, whom he knew to be a methamphetamine

13

user.). As a result, D.M. suffered actual harm—she tested positive for methamphetamine—far beyond "a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d at 803. Thus, on this record, the trial court could have formed a firm conviction or belief that Appellant's actions and inactions exposed D.M. to illegal drugs, which contributed to the endangering environment.

Based on the foregoing, we conclude that the evidence is sufficiently clear and convincing such that a reasonable factfinder could have formed a firm conviction or belief that Appellant disregarded her parental obligations to the degree that she knowingly allowed D.M. to remain in an endangering environment and knowingly placed D.M. with persons who engaged in endangering conduct. FAM. § 161.001(b)(1)(D), (E); *see J.W.*, 645 S.W.3d at 750.

Accordingly, we overrule Appellant's first issue. In light of our disposition, we need not address Appellant's second issue in which she challenges the trial court's finding under subsection (O). *See* TEX. R. APP. P. 47.1; *J.S.*, 687 S.W.3d at 551.

IV. *Best Interest of the Child*

In her third issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of D.M. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *J.P.B.*, 180 S.W.3d at 573. Giving the requisite

14

deference due the trial court, we conclude that, based on the evidence and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of D.M. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best-interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some *Holley* factors will not preclude a best-interest finding, "particularly if [the] undisputed evidence shows [that] the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). Furthermore, evidence that is relevant to Section 161.001(b)(1) termination grounds may also be probative of the child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

The clear and convincing evidence that Appellant endangered D.M. also establishes that terminating her parental rights is in D.M.'s best interest. Given the risk of a parent's erratic employment situation, unstable housing, the possibility of an extended or permanent absence from the child because of incarceration and otherwise, and an ongoing pattern of drug use can support a best-interest finding. *In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). Here, Appellant's drug use, drug-related criminal activity, and incarceration posed

infinite potential dangers to D.M. and "implicates most of the *Holley* factors." *Id.* Not only did Appellant engage in persistent drug use and permit D.M. to be in the presence of known drug users, she admitted to having "terrible taste in men," one of whom had assaulted her around the time that the Department removed D.M. *In re O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.) ("Physical violence in the home leads to an unstable and unpredictable environment for children."); *see also In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.) ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." (quoting *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.))).

Appellant attested to her inability or unwillingness to achieve the permanence and stability that D.M. needs to thrive. *See In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) ("Stability and permanence are paramount in the upbringing of children."). When asked what she had learned throughout the duration of this case, Appellant replied: "I'm not fit to have no kids. That's what I've learned. . . . I'm just not a good parent." She stated that it was in D.M.'s best interest to be in a "[d]rug-free, violence-free home" with caregivers who will "pay for sports and stuff because . . . I can't do that on my own income." Therefore, the trial court could have rationally inferred that relinquishing D.M. to Appellant's care would subject D.M. to a life of uncertainty, unnecessary risks, and instability, which is contrary to D.M.'s best interest. *See In re E.M.*, No. 11-24-00310-CV, 2025 WL 1240792, at *10 (Tex. App.—Eastland Apr. 30, 2025, no pet.) (mem. op.) (citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

Evidence was also presented concerning Appellant's mental health issues and her failure to properly address them. Appellant's recurring unstable behavior and

untreated mental health issues existed when her son was removed in 2016 after she attempted suicide. Nearly a decade later, and a month before the final hearing in this case commenced, Appellant expressed suicidal ideations after a visit with D.M. The support worker who drove Appellant home contacted law enforcement and requested that they conduct a welfare check because she perceived that Appellant was at risk for suicide. "While mental incompetence or mental illness alone are not grounds for termination of the parent-child relationship, '[w]hen a parent's mental state allows the parent to engage in conduct that endangers the physical or emotional well-being of the child, that conduct has bearing'" on the trial court's decision to terminate a person's parental rights. *In re E.G.*, 643 S.W.3d 236, 253 (Tex. App.—Amarillo 2022, no pet.) (quoting *In re P.W.*, 579 S.W.3d 713, 727 (Tex. App.—Houston [14th Dist.] 2019, no pet)).

Appellant's methamphetamine use persisted after the Department removed D.M. in January 2024, after which Appellant immediately "went and got high." Appellant also refused to submit to drug testing after the trial court terminated the monitored return because she had "given up." "A fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs." *In re A.R.D.*, 694 S.W.3d 829, 840 (Tex. App.—Houston [14th Dist.] 2024, pet. denied); *see also R.R.A.*, 687 S.W.3d at 281 (father's positive drug tests and subsequent "across-the-board refusal to undergo service-plan tests" permit the inference of drug use). Considering Appellant's testimony, history of drug abuse, and positive tests at the beginning of the case, the trial court could rationally infer that Appellant was using illegal drugs while she failed to submit to court-ordered drug tests.

Following Appellant's failure to comply with the drug testing that her service plan required, the trial court explicitly ordered her to submit to drug testing two

17

months before the final hearing setting, which she ignored. *See E.C.R.*, 402 S.W.3d at 249 (A parent's failure to complete court-ordered services can support a best-interest finding.); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future."). Notwithstanding Appellant's substantial compliance with her service plan, Appellant failed to address and resolve the Department's and the trial court's prevailing concerns with her illegal drug use and D.M.'s exposure to it. Consequently, Appellant's continued drug use and failure to complete a material court-ordered task support the trial court's best-interest finding.

Because of the child-centered focus of the best-interest inquiry, we may not discount D.M.'s improvement since removal, and her bond with her foster family. *See J.W.*, 645 S.W.3d at 746–47; *In re N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (stating that evidence showing that a young child had bonded with foster family supported best-interest finding). We do not ignore D.M.'s expressed desire to return to Appellant, but it is only one factor that we consider in the overall best interest analysis. *See Holley*, 544 S.W.2d at 372; *cf. In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A child's love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs."). Although a child's desires or wishes for residing with a parent is an important consideration in determining the best interest of the child, "it cannot override or outweigh evidence of danger to the child." *F.M.E.A.F.*, 572 S.W.3d at 732. Moreover, a child's expressed preference is not binding on the trial court; rather, it is only one factor, among others, that the trial court considers in its best interest determination. *See Hart v. Kozik*, 242

S.W.3d 102, 109 (Tex. App.—Eastland 2007, no pet.) (citing *In re Marriage of Stockett*, 570 S.W.2d 151, 153 (Tex. App.—Amarillo 1978, no writ)).

Here, Appellant's drug use directly endangered D.M., and even Appellant agreed and conceded that D.M. requires the support that she cannot provide. Appellant's remote desire to eventually support D.M. is not enough to alleviate the trial court's and the Department's concerns for D.M.'s safety and well-being. *See J.D.*, 436 S.W.3d at 119 ("A parent's inability to provide adequate care for her children, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest."); *Holley*, 544 S.W.2d at 371–72. Thus, this factor does not weigh against a finding of termination. *See Hart*, 242 S.W.3d at 109.

Despite Appellant's limited and negligible efforts to reform, it became clearly and convincingly apparent that her primary interest was not D.M.'s protection and well-being. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Although Appellant attempted to comply with the required court-ordered services and temporarily achieved sobriety during her prior Department investigations, she would nevertheless revert to drug use and criminal activity once the State's involvement had concluded. Thus, any recent, temporary improvement is not enough to avoid the termination of her parental rights. *See N.T.*, 474 S.W.3d at 479.

When we consider the evidence of Appellant's persistent substance abuse, criminal history, and negative history with the Department, the emotional and physical needs of D.M. now and in the future, the emotional and physical danger to D.M. now and in the future, Appellant's lack of parental abilities and refusal to address the issues that precipitated the Department's involvement in this matter, the future plans for D.M., Appellant's unstable living and employment situations, and Appellant's unexcused conduct, we conclude that such evidence supports the trial

court's firm belief or conviction that the termination of Appellant's parental rights is in D.M.'s best interest. *See Holley*, 544 S.W.2d at 372; *see also Yonko v. Dep't of Family & Protective Servs.*, 196 S.W.3d 236, 245 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Accordingly, we overrule Appellant's third issue.

## V. *Jury Demand & Motion for Continuance*

Appellant contends in her fourth issue that the trial court violated her due process right to a jury trial when it denied her jury demand and motion for continuance. Specifically, Appellant asserts that she "simply needed to do the drug tests," and "[t]here was no indication that a continuance with extension would be harmful in any manner . . . as no extension had been granted."

### A. *Jury Demand*

We review the denial of a jury demand for an abuse of discretion. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). A trial court abuses its discretion if it acts "without reference to guiding rules and principles such that the ruling is arbitrary or unreasonable." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). If some evidence reasonably supports the trial court's decision, the reviewing court may not substitute its judgment for that of the trial court, even if it would have reached a contrary conclusion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *DLA Piper LLP (US) v. Linegar*, 539 S.W.3d 512, 518 (Tex. App.—Eastland 2017, pet. denied).

To assert the right to a jury trial in a civil case, a litigant must file a jury demand with the trial court clerk within "a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance." TEX. R. CIV. P. 216(a). However, filing an untimely jury demand does not necessarily defeat a party's right to a jury trial. *E.E. v. Texas Dep't of Fam. &*

*Protective Servs.*, 598 S.W.3d 389, 395 (Tex. App.—Austin 2020, no pet.). When a jury demand is untimely, a trial court should accord the request for a jury trial if it can be done without disrupting the trial court's docket, delaying the trial, or causing injury to the other parties, including the child. *Id.* at 396–97; *In re C.Z.M.*, No. 10-21-00302-CV, 2022 WL 806320, at *2 (Tex. App.—Waco Mar. 16, 2022, no pet.) (mem. op.); *see In re A.L.M.-F.*, 564 S.W.3d 441, 444 (Tex. App.—Waco 2017), *aff'd*, 593 S.W.3d 271 (Tex. 2019). To prevail on appeal, the party challenging the trial court's denial of the untimely jury demand bears the burden to show that granting the request for a jury trial would not have interfered with the disposition of the trial court's docket or the pending case or prejudiced the other parties. *C.Z.M.*, 2022 WL 806320, at *2.

It is undisputed that Appellant's jury demand was not timely filed—on April 7, 2025, eight days before the final termination hearing commenced before the trial court.[3] The trial court had previously extended the dismissal deadline after it terminated the monitored return. With the impending May 21 dismissal deadline and the trial court's and referring court's "extraordinarily busy" dockets at the time, another extension of the dismissal deadline, if feasible, would have been necessary, and indeed the only option available to the trial court, to accommodate Appellant's request. However, Appellant presented no evidence that extraordinary circumstances necessitated that D.M. remain in the Department's care, or that it would be in D.M.'s best interest for that to occur. *See* FAM. § 263.401(b). Appellant therefore failed to show that her untimely demand would not have (1) disrupted or interfered with the trial court's docket, (2) caused significant delay in the disposition

___

[3]We note that, at trial, Appellant blamed her attorney for the untimely filing. However, the evidence shows that Appellant had numerous opportunities to invoke her right to a jury trial—whether through in-person discussions with her attorney or directly to the trial court at various hearings—in the months leading up to the final termination hearing.

of the case, or (3) resulted in prejudice to the other parties, including D.M. *See C.Z.M.*, 2022 WL 806320, at *2. Accordingly, the trial court acted within its discretion, with D.M.'s best interest as its paramount consideration, when it denied Appellant's untimely jury demand and refused to further delay the proceedings and disposition of this case.

B. *Motion for Continuance*

A trial court's ruling on a motion for continuance is likewise reviewed for an abuse of discretion. *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, pet. denied). Under Rule 251 of the Texas Rules of Civil Procedure, a continuance shall not be granted except for sufficient cause shown and supported by affidavit, by mutual consent of the parties, or by operation of law. *See* TEX. R. CIV. P. 251. If a motion for continuance does not comply with Rule 251, we presume that the trial court acted within its discretion in denying the motion. *In re D.L.*, No. 01-25-00186-CV, 2025 WL 2495880, at *9 (Tex. App.—Houston [1st Dist.] Aug. 29, 2025, no pet.) (mem. op.).

Here, Appellant's motion for continuance does not comport with Rule 251—it fails to show (1) sufficient cause supported by affidavit, (2) mutual consent of the parties, or (3) support by operation of law—nor does it state a basis for relief under Rule 252. *See* TEX. R. CIV. P. 251, 252. As such, we may presume that the trial court did not abuse its discretion when it denied Appellant's motion. *In re E.L.T.*, 93 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *In re J.S.*, 02-24-00564-CV, 2025 WL 1478394, at *14 (Tex. App.—Fort Worth May 22, 2025, no pet.) (mem. op.).

We also conclude that the trial court's decision to deny Appellant's requested continuance was reasonably supported by some evidence. *See D.W.*, 249 S.W.3d at 647. As shown by the evidence, Appellant ceased cooperating with the Department

22

in November 2024 and ignored the trial court's order to submit to periodic drug testing.  At the time of the final hearing, D.M. was almost seven, and she had been in the temporary managing conservatorship of the Department for over sixteen months.  "[T]he goal of establishing a stable, permanent home for a child is a compelling government interest that may justify the trial court's denial of a motion for continuance in a parental termination case."  *In re J.P.H.*, No. 04-23-00131-CV, 2023 WL 5280376, at *8 (Tex. App.—San Antonio Aug. 16, 2023, pet. denied) (mem. op.).  Moreover, the congested trial dockets of the trial court and referring court could not accommodate such a request, one which the trial court could have reasonably perceived to be made "for purposes of delay."  Given Appellant's shortcomings and D.M.'s need for permanence, we conclude that the trial court did not abuse its discretion when it denied Appellant's "eleventh hour" motion for continuance.

Accordingly, we overrule Appellant's fourth issue.

VI. *This Court's Ruling*

We affirm the order of the trial court.

W. STACY TROTTER
JUSTICE

October 23, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

23